Krock, Appellant, v. Ballard Sprague and Co. et al.

390

Argued December 10, 1931.

Before Trexler,
P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*Israel Krohn,* for appellant.

*Edward J. Fox, Jr.,* of *Fox and Fox,* for appellee.

OPINION BY CUNNINGHAM, J., March 5, 1932:

In this workmen's compensation case the referee and board set aside, upon the ground of mistake, a final receipt executed by the claimant and modified the agreement theretofore entered into between him and his employer for compensation for total disability into one for partial disability. Upon appeal by the employer, the court below reversed the action of the compensation authorities and entered a judgment in favor of the employer, from which the claimant now appeals.

We are convinced, upon a review of this record, that, by reason of inexperience and ignorance of his rights upon the part of claimant, mistaken advice from his former counsel, inaccurate pleading in his petition to the board and misapprehension by the referee, the issue presented to and disposed of by the court below was not the issue claimant sought to raise and that he has not had a determination by the compensation authorities of the questions of fact, or by the court below of the questions of law, arising out of the evidence before the referee.

An outstanding feature of the case is that there was ample, legally competent evidence to support the conclusion of the referee that claimant at the date of the hearing was still partially disabled as the result of an accident suffered in the course of his employ-

ment. There is something wrong about a judgment which, under such circumstances, turns him out of court and relieves the insurance carrier of his employer from the payment of any additional compensation. A large part of the difficulty in this case is due to the failure of claimant's representative and of the compensation authorities to distinguish properly between separate and distinct provisions of our workmen's compensation law. The only dispute under the testimony is confined to a difference of opinion between medical experts.

Claimant was employed by Ballard Sprague and Company as a carpenter. On September 11, 1928, while in the course of his employment, he fell from a hanging scaffold and was totally disabled. At the time of his injury he was receiving a weekly wage of $49.50 and on September 21st an agreement was entered into providing for the payment of compensation for total disability. On February 1, 1929, his employer filed its petition for termination of the agreement upon the ground that claimant's disability had finally ceased and thereupon suspended payments; so far as the record before us discloses no action was taken on that petition. Under date of February 14, 1929, claimant's former counsel wrote the insurance carrier stating that claimant had been served with notice of the petition for termination, directing attention to the fact that payments under the original agreement were in arrears and saying, in effect, that if the arrearages and the hospital bill were paid he would advise claimant to sign a final receipt. The concluding sentence of the letter read: "He is still compelled to visit the hospital for treatments and compelled to wear a tight elastic brace around his spine." There was no evidence that the hospital bill was paid and the letter gave notice that claimant's disability had not finally ceased.

On February 18th a check for the compensation due up to February 1st, to which was attached a final receipt, was presented to claimant; he cashed the check and signed the receipt. The circumstances under which he signed were thus stated by him in his testimony before the referee: ''Q. What were the circumstances under which you signed this final receipt on February 18, 1929? A. I didn't have any income and if I wanted my money it was necessary for me to sign this receipt; that if I didn't sign the receipt I wouldn't get my money. Q. Who told you to sign it? A. Mr. Laub [his then counsel] he said to me that if I wanted the check and to get it cashed that I would have to sign it. Q. Were you under the impression that this receipt was a settlement in full for your claim? A. Not entirely. Q. Did you understand that at the time you signed this receipt that you would get no more compensation payments for your disability? A. No, sir. Q. What was your impression at the time you signed this final receipt? A. The check was attached to that paper and I thought that I was only getting my money. The check was attached to this paper and there were words on this paper that the check was not to be separated from this paper. Q. Was the check attached to the top of this paper? A. Yes, sir, right on the top. Q. When you said something about the check not being detached from this paper, you referred to the words at the top of the final receipt, 'Do not tear these apart. They must go together'? A. Yes, sir. Q. In order to get your check it was necessary for you to sign this paper at the bottom? A. Yes, sir. Q. Did you agree at that time that you signed this paper that it was in full settlement of your claim? A. No, sir. Q. This final settlement receipt states that you were able to return to work on the 1st of February, 1929, is that a fact? A. No, sir. ...... Q. Did you read it over before you signed·it? A. Yes,

sir. Q. Did you understand what was in it? A. Not some things that were in the statement; I simply thought that it was a receipt for my compensation. Q. Didn't you know that when you signed this receipt that your compensation payments would be stopped? A. No, sir; I thought it was a receipt for the compensation I was being paid; this is the first time I had anything like this." Continuing, claimant testified that at the time he signed the receipt he was unable to do the kind of work he had been doing at the time of his injury and was not able to do any work until March 19, 1929, when he was employed by another employer for light work in taking care of a dairy and truck farm at a weekly wage of $18.75. It is not for us, nor the court below, to weigh the evidence and make findings of fact therefrom, but this testimony was competent for the consideration of the referee and board upon the question whether claimant signed the final receipt under the mistaken belief that it was necessary for him to do so in order to obtain the amount of the compensation payments which had been improperly withheld by the insurance carrier for the period prior to February 1st and that its execution would not affect his right to further payments. Clearly the insurance carrier had no right to attach a final receipt to its check for payments due prior to February 1st, the date upon which the petition for termination was filed. It then had a right to suspend payments to such an extent as the facts alleged in the petition would, if proven, require, but claimant had been entitled all along to prompt payment of his compensation as it fell due under the agreement, free from any demand for a final receipt. When the payments ceased, claimant secured other counsel and promptly endeavored to have the final receipt set aside and the agreement reinstated and modified to provide compensation for partial disability. But here, as in Keifer v.

Phila. and Reading C. & I. Co., 102 Pa. Superior Ct. 235 (a case quite similar to the one at bar except that no question of limitation is now involved), the petition to the board, filed March 19, 1929, was not properly drawn, either as to form or substance. At this point the confusion in this record begins.

As stated at length in the Keifer case, proceedings to set aside a final receipt should be instituted under Section 434 of the Act of June 26, 1919, P. L. 642, 669, and the grounds there specified for such action are that the receipt "was procured by fraud, coercion, or other improper conduct of a party or is founded upon mistake of law or of fact." When the relief sought is the review, modification, setting aside, reinstatement, suspension or termination of an original or supplemental agreement the petition should be presented under Section 413 of the Act of June 26, 1919, supra, as amended by Section 6 of the Act of April 13, 1927, P. L. 186, 194. As we have frequently said, the first paragraph of this section provides for the review, modification or setting aside of an agreement upon the ground that it was procured by fraud, coercion or other improper conduct of a party or was founded upon a mistake of law or of fact. There is no suggestion any place in this record that the original agreement of September 21, 1928, was improperly procured or was founded upon any mistake and the first paragraph of Section 413 has therefore no application to any phase of the case. The second paragraph of Section 413 contemplates the modification, reinstatement, suspension or termination of an original or supplemental agreement upon proof that the disability of an injured employee has increased, decreased, recurred or has temporarily or finally ceased. It relates to changes that have occurred in the employee's physical condition since the compensation agreement was entered into or terminated. The petition of the employer for termination of the agree-

ment in this case was based upon this paragraph and the claimant's petition for its reinstatement and modification should likewise have been presented to the board under the same paragraph. Instead of presenting a petition under Section 434 to set aside the final receipt, including also a prayer, under the second paragraph of Section 413, to reinstate the agreement and modify it into an agreement for partial disability, the claimant's petition in this case referred only to Section 413 and was entitled a petition for a review of the agreement. The averments were: "And as the ground of this petition I allege that the said agreement was based upon the hereinafter stated mistake. That I signed the final receipt by mistake; that I am totally disabled at the present time. ...... That I pray to have the final receipt set aside and agreement modified or reinstated to compensate me for my present disability." There was no justification whatever for averring that the agreement was based upon a mistake, nor for stating that claimant was then totally disabled, and it is clear from his testimony that he never intended to raise these issues.

The insurance carrier's answer denied the final receipt was signed by mistake and denied claimant was totally disabled. The petition was referred to a referee who, after taking testimony at two hearings, made, inter alia, these findings: "(2) ...... That the claimant signed a final receipt on February 18, 1929. He knew it was a final receipt at the time. He did not return to work until March 19, 1929, and the character of work he has done since then has been lighter than that at which he was engaged when injured. He was a carpenter when hurt. He has been milking cows, feeding them and doing other work necessary in connection with dairying. (3) His weekly wage when injured was $49.50. His weekly wage since March 19, 1929, has been $18.75. ...... (6) We find that the

claimant has not wholly recovered from the effects of his injury. He is still partially disabled. (7) The claimant signed the final receipt by mistake. He knew it was a final receipt but he was mistaken in the thought that he could repair to his former employment—that of a carpenter.''

Although the medical experts called respectively by claimant and the insurance carrier disagreed in their opinions, there was competent testimony to sustain the finding that, although claimant had secured employment on March 19, 1929, he had not been able up to date of the hearing, November 29th, to work at his trade or perform heavy labor of any kind. We have heretofore stated in the Keifer and other cases that it makes no material difference under which section a petition may have been filed, provided proper grounds for action under either, or both, be proved. The referee, after ordering the final receipt set aside, modified the agreement to provide for compensation for partial disability since February 1, 1929, at the rate of $15 per week, etc. This action cannot be sustained. It was based solely upon the difference in wages stated in the third finding. The measure prescribed by the statute is the difference between the wages received at the date of injury and the ''earning power'' of claimant at the time of hearing. Mere proof of the wages received from time to time is not conclusive upon the question of loss of earning power: Johnson v. Jeddo-Highland Coal Co., 99 Pa. Superior Ct. 94; Keifer v. Phila. and Reading C. & I. Co., supra. The finding that the ''mistake'' upon which the final receipt was founded was that claimant ''thought he could repair to his former employment—that of a carpenter,'' when in fact his physical impairment would not permit him to resume his trade, is not only not responsive to his testimony but directly contrary to it. The court below so held and was entirely justified in saying, in

the course of its opinion, "There is not a scintilla of competent evidence to support this finding that the claimant was mistaken in this respect." We are of opinion, however, that it did not follow that judgment should be entered for the defendants.

The compensation authorities were responsible for the fact that the issue presented to the common pleas for its determination was not the one raised by claimant. Appellant, unlike the claimant in Shuler v. Midvalley Coal Co., 296 Pa. 503, moved promptly to set aside his final receipt. It was "prima facie evidence of the termination of the employer's liability to pay compensation," and the burden was on the claimant to produce evidence sufficient in quantity and quality to satisfy the compensation authorities, as triers of the facts, that it was founded on the mistake set up by claimant in his testimony. Whether the evidence in this case was sufficient is a question for the referee and board. They have not yet passed upon the real reason assigned by claimant as sufficient to warrant the setting aside of his receipt. If they find in his favor on this issue, they should then proceed to reinstate and modify the agreement in accordance with their further findings relative to claimant's earning power.

We think the interests of justice will be best served by directing that the record be remitted by the court below to the board for specific findings of fact upon the issues above indicated.

The judgment is reversed; the record is remitted to the court below to the end that it may be by that court remitted to the board for further proceedings not inconsistent with this opinion.