## Graham *v.* Hillman Coal & Coke Company, Appellant.

Argued April 15, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*R. M. Steffler*, for appellant.

*John E. Evans, Jr.*, of *Margiotti, Pugliese, Evans & Reid*, for appellee.

OPINION BY CUNNINGHAM, J., July 10, 1936:

The controversy in this workmen's compensation case

arose out of the filing by the claimant, on December 14, 1933, of a petition to set aside a final receipt signed by him on August 10, 1932.

After hearings at which medical and lay testimony was taken, the referee erroneously dismissed the petition upon the ground it had been filed too late. The board reversed the referee, set aside the receipt, and made an award of additional compensation. Upon the employer's appeal, the court below affirmed the action of the board and entered judgment upon the award; hence, this appeal by the defendant employer.

Our conclusion is that the judgment should be affirmed, in a modified form, upon one of the grounds assigned by the board and the common pleas, viz; that the receipt was procured by "improper conduct" upon the part of the employer's representatives. An additional ground considered by the board need not be discussed.

In the course of his employment with appellant as an inside motorman claimant suffered an injury on November 18, 1931, thus described in his testimony: "Well, I was pushing three coal cars when I put my back up against them to give them a push, something cracked in my back and I went on my face, and I squirmed around there until I got in this position that I could get ease, and it was the foreman and the shot firer that come along there and asked me what was the matter, and I told them." Under an open agreement compensation was paid for total disability and at the rate of $15 per week from the seventh day after the accident until June 15, 1932, to the amount of $435.

On that date appellant, apparently having decided for itself that claimant's disability had ceased, abruptly stopped paying any compensation. If it honestly believed claimant's disability had decreased or finally ceased it was its plain duty to file a petition under Section 413 of the amendatory Act of June 26, 1919, P. L.

642, 661, as further amended by the Act of April 13, 1927, P. L. 186, 194, to modify or terminate the open agreement. By its arbitrary attempt to terminate the contract in its own way it took the risk of whatever unfavorable inferences might be drawn from such conduct. Naturally, the sudden cessation of payments brought on a dispute with claimant.

We need not recite the findings of fact of the compensation authorities in detail. It is sufficient to say that the evidence established that claimant suffered, in the language of one of appellant's experts, a "lumbosacro strain" of considerable severity. After treatment in Mercy Hospital from January 12th to February 13, 1932, he was discharged as able to go back to light work.

In March 1932, one of appellant's doctors placed a brace upon claimant and advised appellant on May 1st of that year that claimant was, "in his opinion", able to resume light employment. No effort was made to show that appellant offered claimant work within his capacity at that time.

The circumstances under which the final receipt was signed, as testified to by claimant and found by the compensation authorities, may be thus stated: In the latter part of July, 1932, Dr. Paul B. Steele, an orthopedic surgeon, advised claimant to have several infected teeth extracted. A letter to that effect was written by the doctor to claimant's counsel and given by them to claimant. Referring to the events following the receipt of the letter, claimant testified:

"So after I got the letter I wanted to be a man and I took the letter to Mr. Gundelfinger [appellant's representative] there and showed it to him, he said; 'There is not very much the matter with you at that.' Well, I asked him what he was going to do about it, he said, it was up to me, they had done all they was going to do. Well, I told him to give me my compensation and I would go and have my teeth fixed and when I got

able I would come down and report for work. He said, 'Will you do that?' I said, 'Yes, sir.' The next day I went in to get my compensation, the check, and the clerk there said, 'Come around here Mr. Graham you will have to sign for that,' and I signed for it, and I took my money and paid my store bill of $70 and went and got my teeth fixed."

The compensation referred to by the witness was the aggregate of the payments which had accrued, under the agreement, subsequent to the date appellant stopped paying. Appellant then paid claimant an additional sum of $111.43, being the amount due, under its contract, up to August 6, 1932, and it was in connection with this payment that the final receipt was taken on August 10, 1932.

After referring to the agreement by number and to the amount which had accrued subsequent to June 15th, the receipt continued: "Being the final payment due under the above agreement ...... the disability of the said Clarence Graham having terminated on the said August 6, 1932, as follows: Able to return to work."

Charles Hill, one of appellant's clerks present when the receipt was signed, testified claimant read the paper and was told "he would not get any more money." This was denied by claimant who testified Mr. Gundelfinger told him he "would have to sign a receipt" but did not tell him it was a final receipt. In reply to a question whether he was able to work at that time, claimant said: "No sir, indeed I was not. I got that money to go to the doctor so I could try to get able to go to work."

The removal of the teeth did not improve claimant's physical condition and the evidence shows that his disability so increased between the date of signing the receipt and December 14, 1933, (the date upon which the petition was filed), that by the latter date he was totally disabled as a result of his injury.

That claimant's petition was for the setting aside of the final receipt is beyond question. It refers to the agreement and recites that he received compensation thereunder until the termination of the agreement by the receipt of August 10, 1932. The prayer of the petition was that the board "set aside the final receipt under the provisions of Section 434, Act of June 26, 1919, P. L. 642, for the following reasons: The said final receipt signed by me on August 10, 1932, was signed under a mistake of law and a mistake of fact. My disability had not ceased at that time, and it has continued to date. I did not understand the significance of the final receipt."

Although the receipt referred on its face to section 434, (Act of June 26, 1919, P. L. 642, 669,) the referee, disregarding everything this court said, more than a year before that time, in Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct. 165, 164 A. 731; Bucher v. Kapp Bros. et al., 110 Pa. Superior Ct. 65, 167 A. 652, and many other cases, to the effect that section 434 relates exclusively to final receipts and that section 413 makes no mention of them whatever, treated the petition as if filed under section 413 and enforced against the claimant the limitation of one year, prescribed in the second paragraph of that section, by dismissing his petition. The board, however, promptly corrected this palpable error upon the part of the referee by considering and disposing of the petition upon its merits.

It is clear, under the testimony, that the representatives of appellant knew from the reports of appellant's own doctors that claimant was not able to return to his regular work when they paid him the compensation which had been improperly withheld for nearly two months and took the final receipt in which it was recited that the disability of claimant had terminated and that he was able to return to work. Manifestly, this

was not proper conduct upon the part of the representatives of appellant. The board found as a fact that claimant, when he signed the receipt, was destitute and unable to provide for his family, and from all the testimony drew the inference that the receipt was signed, "in desperation for food money." It is the exclusive function of the compensation authorities to weigh and consider the testimony and make reasonable deductions therefrom. Our only duty and power is to determine whether there was sufficient competent evidence to sustain their findings. Upon an attentive reading of the testimony, we are satisfied there was evidence sufficient to support, at least, a finding that claimant did not understand the significance of the final receipt and that it was procured by such improper conduct upon the part of the representatives of appellant that the board was justified in setting it aside. The court below, therefore, did not err in dismissing the employer's appeal from that action.

The award and judgment, however, are not in proper form. By the award appellant is directed to "resume payments to the claimant at the rate of $15 per week from August 6, 1932, to June 25, 1941, with interest, etc." The date specified in 1941 is the time at which a period of 500 weeks from the seventh day after the accident will expire. Although the medical testimony indicates that claimant's disability is total and permanent, many things may happen before June, 1941, and the award as framed would exceed the allowable maximum compensation.

The judgment, which follows the award (with the exception of limiting the maximum to $6,500, exclusive of costs), cannot be affirmed in its present form. It may be helpful to direct the attention of our courts of comman pleas to the provisions of the statute relative to entering judgment when an award or order is af-

firmed upon appeal from the board, and with respect to executions upon such judgments.

Section 427 of the original statute, as amended by the Act of June 26, 1919, P. L. 642, 666, 77 PS §878, directs that "the court shall enter judgment for the *total amount* stated by the award or order to be payable, whether then *due and accrued or payable in future instalments.*" (Italics supplied)

The same language is used in Section 428, 77 PS §921, providing for the entering of judgments by prothonotaries upon certificates of awards or agreements in uncontested cases. That section also provides (77 PS §951) that executions may be issued upon such judgments by filing with the prothonotary an affidavit of default in making payments of compensation.

"Execution shall in all cases be for the amount of compensation *and interest thereon* due and payable up to the date of the issuance of said execution, with costs, and further execution may issue from time to time as further compensation shall become due and payable" etc. (Italics supplied)

We think the legislative intent disclosed by these provisions is that when an award, under section 306(a), (b) or (c), is affirmed the judgment should be entered for a sum ascertained by multiplying the weekly instalment by the maximum number of weeks during which the award may normally run (but not exceeding $6,500 in awards under 306(a) ), and including any statutory costs; subject however, (1) to a credit for the aggregate principal sums of any instalments already paid, (2) to any future termination, modification, suspension or reinstatement, justified by the death of the claimant, or (except in awards under 306(c) ) by a change in the character of his disability, and (3) to liquidation, at any time and from time to time, for the aggregate of instalments then due and unpaid, together with interest thereon, calculated as prescribed

in Petrulo v. O'Herron Co. et al., 122 Pa. Superior Ct. 163, 186 A. 397.

Where the award is to the widow, or dependents, of a deceased employee, the judgment may be molded to provide for the contingency of the remarriage of the widow or a change in the status of the defendants.

In this case the award is under 306(a) at the maximum rate of $15.00 per week, and compensation has been paid up to August 6, 1932, in the sum of $546.43. The judgment should, therefore, have been entered for $6,500, and costs as awarded, subject to a credit of $546.43; and, as this is a final adjudication in favor of the claimant, he will be entitled (under §5 of the Act of April 13, 1927, P. L. 186, amending §410 of the statute, 77 PS §751,) to receive, at the time of the first payment under the judgment, not only the aggregate of the instalments then due but also simple interest upon each instalment from the date that particular instalment should have been paid.

Judgment modified and as modified affirmed.