## Williams *v.* Warner Brothers Theatres et al., Appellants.

Argued April 28, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*James J. Burns, Jr.,* for appellants.

*Jason Richardson* and *O. K. Eaton,* for appellee, were not heard.

OPINION BY CUNNINGHAM, J., July 15, 1937:

The claimant in this workmen's compensation case was employed by Warner Brothers Theatres as the Assistant Manager of its South Hills Theatre. On July 5, 1932, while in the course of his employment, he suffered a severe injury to the inside lower part of his left thumb through the breaking of the porcelain flush handle of a toilet he was repairing. Although three operations were performed between November 9, 1932, and July 7, 1933, in an effort to restore the use of the member, the result of the accident was thus described by Dr. F. S. Morris, claimant's medical witness: "The thumb lies across the palm of the hand. It is contracted in that position and it is impossible to straighten it out."

The only conflict in the medical testimony was upon the question whether the injury had resulted in the permanent loss of the use of claimant's hand, or only of his thumb. Dr. Morris was of opinion that the condition and position of the thumb so interferes with the ability of claimant to grasp objects with his fingers that he has lost the industrial use of his left hand. Dr. G. F. Berg, called by appellants, was of opinion that he had lost only the use of his entire thumb. The referee and board adopted this view and it was absurd for appellants to assert, as they did in their exceptions in the court below, that there was "no legally competent evidence to sustain a finding of fact that the claimant had lost the industrial use of his left thumb." There was evidence from which a referee could have found that he has lost the use of his hand and was discharged because he was unable to grasp the rungs of a ladder which he would have been obliged to use in order to place electric bulbs in the sign in front of the theatre.

Upon the testimony taken at three hearings before him, the referee made an award of compensation at the rate of $9.75 a week beginning July 12, 1932, and con-

tinuing for a period of sixty weeks—a total of $585.—under the provisions of Section 306 (c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as finally amended by the Act of April 13, 1927, P. L. 186, 77 PS §513. The board, after making several additional findings, affirmed; the court below entered judgment upon the award, and the employer and its insurance carrier have appealed.

Under the testimony of appellant's own expert this judgment should be affirmed, unless they are able to show some substantial legal cause to the contrary. The only defense suggested is the purely technical one that claimant defeated his right to recover any compensation for the permanent injury sustained in the service of his employer by withdrawing, under circumstances hereinafter considered, his original claim petition. That petition was filed on June 28, 1933, well within the year following the accident. The records of the board show that on August 1, 1933, claimant withdrew his petition. That date was subsequent to the last operation. On March 6, 1934, he presented a petition for the reinstatement of his original claim petition, or for leave to file a new one. The ground upon which he sought the reinstatement was thus set forth: "I allege that, prior to August 1, 1933, I was informed by my employer that I was not entitled to any compensation for my injuries, other than was admitted due me in the defendant's answer to claim petition. [One week and four days] That I was informed by my employer acting by its servants, agents or employees that I would be retained in the services of said employer and at that time I, being still treated by doctors for my injury, believing that the use of my hand would be restored, relied and acted thereon and on August 1, 1933, withdrew my claim petition. That since August 1, 1933, my injuries have not improved and have resulted in the loss of the use of my left hand entirely. That on or about January 13,

1934, I was informed by my employer that my services would no longer be needed. Your petitioner prays that in view of the fraud, deception, and coercion practised upon your petitioner, by his employer and in view of the mistake, both in law and fact under which he acted in withdrawing his claim petition, that the said petition be reinstated and hearing had thereon."

On May 9, 1934, the board reinstated the petition and directed that a rehearing thereunder be conducted by a referee. Thereupon, the employer and carrier appealed to the common pleas from that order, contending that there was no authority in law for the reinstatement of the petition. The court below in an opinion by ROWAND, J., very properly held that the order appealed from was interlocutory and the appeal, therefore, premature. By agreement of counsel, the court, under date of October 15, 1934, made an order reading: "The case is referred back to the workmen's compensation board for findings of fact and conclusions of law, on the petitions filed by the claimant March 6, 1934, and June 28, 1933, after which the record is to be returned to this court for final disposition on defendant's appeal at this term and number."

The board, pursuant to this order, remanded the record to one of its referees for hearing. Claimant testified before the referee with relation to the details of the accident, the various operations to which he submitted, and stated that although he was unable to work for several weeks following each operation he received his wages in full down to the date of his discharge. With respect to compensation, his testimony was that he received a letter from the insurance carrier pursuant to which he called at its office and was tendered a check for $15.00, which he refused, because he "didn't know what it was for." An excerpt from his testimony relative to this incident reads: "Q. Was there anything further said there about your being entitled to compensa-

tion? A. Yes, when I refused to take the check, he [the representative of the carrier] asked me why I refused it. I told him I didn't know what it was for, he said it was for the accident that had occurred to me—to my hand, and that I couldn't receive any other compensation." It is proper to note that the insurance company named as one of the appellants herein was not the carrier referred to by claimant.

Referring to a time shortly after the original claim petition had been filed, claimant testified that the following occurred at an interview between H. H. Koch, the manager of the theatre, and himself: "Q. What happened at that time? A. He called me into the office and wanted to know 'What the hell I went and done?' ......Q. What did you answer him? A. He asked if I had put a claim petition with the compensation board. I told him, yes, and that they had got in touch with the head office down here and wanted to know why I hadn't received any compensation for my accident and that, anyhow, I know we got talking about it, and he told me I couldn't do that. By the referee: Q. Couldn't file a claim petition? A. Couldn't file a claim petition, and that if I wanted my name left on the payroll, that I'll have to go back down and withdraw that claim petition. Q. Was your hand at that time in a bandage? A. It was. Q. Is that all that was said there? A. That was all that was said there. Q. Didn't you answer him after he said that? A. I just told him that, and he said that he was told I couldn't do it—as far as I knew I had to do what he said for me to do."

Claimant's further testimony was that he went to the local bureau of the board following this conversation and by reason of the threat to discharge him withdrew the petition. Williams' testimony was contradicted in a number of particulars by Koch. The referee did not make any findings with respect to the circumstances under which the petition had been withdrawn, but the

board added to the findings of the referee a finding of fact, reading: "The claimant withdrew his claim petition under the threat that he would be discharged if he failed to do so." It also added this conclusion of law: "The claimant was coerced into withdrawing the claim petition which he had filed and said withdrawal is therefore a nullity and of no effect." The general conclusion of the board was that claimant was entitled to have the petition reinstated and that the findings of the referee were supported by competent evidence.

It was for the board to determine whether it would believe claimant or Koch. Counsel for appellants contends the evidence was insufficient to support a finding of coercion and that in any event there is no provision in the statute for the reinstatement of a claim petition. There is no express authorization for the reinstatement of a petition after the expiration of one year from the date of the accident, but the legislature has throughout the statute indicated its intent that an employer shall not be permitted to take advantage of any action by an injured employee, or his dependents, "which was procured by fraud, coercion, or other improper conduct of a party or is founded upon mistake of law or fact." Original or supplemental agreements and final receipts may be set aside at any time, within the respective compensation periods fixed in the statute, upon any one or more of these grounds. We see no reason why the withdrawal of a petition which has been thus procured should not also be set aside in order to prevent the infliction of a grave injustice upon a claimant.

It is clear, upon a reading of the entire record in this case, that claimant was led to withdraw his original petition by the attitude and conduct of his employer's general manager and its then insurance carrier. It is not so clear, however, that they were animated by a wilful and corrupt motive to deprive claimant of his legal rights; their conduct seems rather to be traceable

to an entirely mistaken understanding of his rights and the duty they owed him under the circumstances. The effect of their conduct, however, was just as serious to him as if it had been deliberately fraudulent.

Both Koch and the insurance company were evidently under the mistaken impression that as claimant was being paid full wages, although not able to earn them, he was not entitled to any compensation, as such, and that they were liable only for surgical and hospital bills during the thirty day period following the accident.

Even if the operations had been successful and the use of the thumb restored, his employer would not have escaped liability for compensation for partial disability by paying claimant wages he was not able to earn. When it became apparent, at least early in January, 1934, that claimant had permanently lost the use of his thumb, he became entitled under paragraph (c) to compensation for a period of sixty weeks beginning on the seventh day after the accident.

An agreement under that paragraph should have been executed. It is well settled that the amount payable under paragraph (c) for the loss of the use of a member is to be paid without considering, but including, all incapacity arising from its loss whether such incapacity be total, partial or no incapacity at all: *Lente v. Luci,* 275 Pa. 217, 119 A. 132. It was, therefore, wholly immaterial whether claimant was or was not paid wages for the entire period of his employment following the accident. The payment of the wages furnished no defense whatever against liability for payment of the compensation fixed by this paragraph.

Considering, as charitably as possible, the failure of the employer and carrier to make a proper agreement under paragraph (c), it may be said that their neglect should be attributed to their mistaken understanding of the law. Their present appeal from a judgment

which now compels them to do merely what they should have done voluntarily long ago is without merit.

Under date of June 16, 1936, appellants' exceptions were dismissed and judgment entered upon the award in the principal sum of $585., with interest from the seventh day after the accident. We are not certain that the interest has been calculated by the proper method. If it has not, the judgment should be amended, by agreement of counsel, in accordance with the principles announced in *Graham v. Hillman Coal and Coke Co.*, 122 Pa. Superior Ct. 579, 186 A. 400, and *Kessler v. North Side Packing Co.*, 122 Pa. Superior Ct. 565, 186 A. 404.

Judgment affirmed.