## Zygmunt *v.* Copperweld Steel Company et al., Appellants.

Argued May 6, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellants.

*Harry J. Nesbit,* with him *David S. Palkovitz,* for appellee.

OPINION BY CUNNINGHAM, J., July 15, 1937:

The only legal question involved upon this appeal by an employer and its insurance carrier from an order of the compensation authorities reinstating an open agreement for payment to the appellee of compensation for total disability, following an accident suffered by him in the course of his employment with appellants, is whether there was sufficient legally competent evidence to support the order. The uncontroverted facts may be thus summarized: Claimant, forty-eight years of age, had been in the employ of the steel company since 1926, and worked steadily up to October 10, 1932. On that date claimant was drawing a 3/8″ wire over a coil; it sprung back, struck the protective goggles he was wearing and broke the right lens, inflicting "three small lacerations above the right eye and a small laceration at the conjunctiva."

On November 15, 1932, pursuant to section 6 of the amendatory Act of June 26, 1919, P. L. 642, 660, 77 PS §731, the parties executed compensation agreement No. 2,942,904, by which it was provided that the company would pay claimant compensation at the rate of $15.00 a week beginning October 17, 1932, and continuing for an unspecified number of weeks. It was stated in the agreement that the amount of compensation due upon the date of its execution was $12.84. At

the same time appellants procured from claimant a final receipt in which he acknowledged he had received "$12.84, being the full amount of compensation payable for the period from 10-17-32 to 10-22-32 inclusive, at the rate of $15.00 a week, being the final payment due under [the agreement]." It was also recited that the disability of claimant had terminated on October 22d and that he was "able to resume work 10-23-32." Claimant did not return to work nor has he worked since the date of the accident.

On October 7, 1933, claimant filed with the board a petition in which he averred he had been totally disabled ever since the accident and prayed for additional compensation. Appellants answered that any disability from which claimant was suffering had not resulted from the accident of October 10, 1932. At the first hearing before the referee, to whom the petition and answer had been referred, it was so amended as to make it a petition to set aside the final receipt. At the time of the accident, and for a number of years prior thereto, claimant had a latent syphilitic condition. By December, 1934, that condition had progressed to the tertiary stage and he was also suffering from arteriosclerosis with high blood pressure.

The controverted question arising out of these facts was whether the disability from which claimant was suffering at the time of the hearings, January 21 to May 16, 1935, was attributable to the normal progress of the syphilis with which he was afflicted at the date of the accident or whether that preexisting disease had been so aggravated by the accident that his disability was traceable to the accident. The referee found that claimant has been totally disabled since his injury and that his disability was caused by the effects of the accident. With reference to the receipt, he found that claimant signed it "by mistake as he did not know what he was signing as the injury which he sustained affected

his eyes," and that he "was not aware of the serious-ness of his injury."

The order of the referee was that "the final settle-ment receipt ...... be set aside and ...... compensa-tion payments under compensation agreement No. 2,942,904 reinstated as of October 24, 1932." It should be noted that, technically at least, this is not an award but an order setting aside a final receipt, pursuant to the authority conferred in section 434 of the Act of 1919, supra, (P. L. 669) 77 PS §1001, to set such receipts aside when they have been "procured by fraud, coercion, or other improper conduct of a party or [are] founded upon mistake of law or of fact." The board upon appeal to it affirmed the order of the referee.

The record discloses the usual conflict of medical opinions. Dr. Harry L. Baer, who examined claimant on December 31, 1934, testified: "A. From the labora-tory tests, which show this man was suffering from cerebral spinal syphilis, as evidenced by positive blood test and positive spinal fluid test and a special test done on the spinal fluid that showed this man had an early case of paresis ...... This man, I believe, was suffer-ing from syphilis of a symptomatic type prior to his accident. When and where he contracted this syphilis or how long ago, I don't know; his history isn't clear to that point. In other words, this man had a non-active syphilis. We know definitely that trauma is a precip-itating factor and will activate a latent or quiescent stage of syphilis. The trauma itself doesn't have to be very severe. Be quite difficult to gauge the amount of trauma that will precipitate a syphilis in an individual; but, in view of the fact that the man tells me he was perfectly well, worked regularly, didn't suffer from headaches or have any other complaint, leads me to believe that the injury he sustained was a contribut-ing or a precipitating factor in activating a latent form of syphilis. By the Referee: Q. In other words you

think it activated that latent syphilitic condition at the time he sustained his injuries, is that correct? A. Yes. Q. And that is premised entirely on the fact that there was a syphilitic condition, latent and existing at that time? A. That's right. Q. Is this man disabled, Doctor? A. Yes, sir. Q. Disabled from performing manual labor? A. At the present time, I believe so." Dr. Baer was corroborated by Dr. M. R. Hadley as to the extent of claimant's disability. Dr. Paul H. Franklin testified claimant had arteriosclerosis, with heart murmurs and high blood pressure, and was unable to work. His diagnosis was "syphilis of the central nervous system, which had been lighted up or accelerated by the slight concussion" occurring at the time of the accident.

On behalf of appellants Dr. Weil, an eye specialist, stated claimant had, at the date of his examination on December 5, 1932, "workable vision" with the aid of proper lenses. He also said there would be more or less concussion from a blow severe enough to break the protective glasses claimant was wearing at the time of his injury. Dr. George J. Wright testified that claimant on January 21, 1935, was not a well man; "had lost twenty pounds in weight, had arteriosclerosis, with high blood pressure, and the physical signs of syphilis affecting the nervous system, proven by a positive blood test." The witness stated, however, that he did not believe "this accident aggravated or accelerated his condition." His opinion was that the disability "was the natural trend of findings following the thing found in the systemic condition."

As stated by this court in *Horwath v. E. G. Budd Mfg., Co.,* 127 Pa. Superior Ct. 154, 191 A. 675, a case quite similar upon its facts, it was the duty and province of the compensation authorities to weigh this conflicting testimony and determine which medical opinion they would adopt. We are satisfied there was competent evidence supporting the findings of the ref-

eree and board with respect to claimant's disability and its cause.

Turning next to the question whether there was evidence to warrant the setting aside of the final receipt, we find this testimony by the claimant. Under cross-examination, and upon being shown the receipt and asked whether it bore his signature, he said: "I can't say, I don't know whether I sign it ...... Q. Mr. Zygmunt, do you know how to read and write English? A. I can read, but I couldn't see anything after the accident I couldn't see. Q. Can you write English? A. I can write. ...... Q. Were you able to read and write on October 23, 1932, Mr. Zygmunt? A. Oh, yes. I read and sign before accident, no even need the glasses. After the accident, I couldn't read, couldn't see." Another circumstance, according to claimant's testimony, incident to the signing of the receipt, was that he was told he could not get the compensation then due unless he signed it. Referring to a statement by one of the carrier's clerks at the time his signature was requested, claimant testified: "Q. What did the girl tell you to do? A. I no want to sign that paper and she tell me she no give me check. She no give me check, what I am going to do? Have to sign the papers." This testimony, which was not contradicted, would justify a finding of "improper conduct" upon the part of appellants' representative in threatening to withhold compensation admittedly due unless claimant signed the receipt. See *Krock v. Ballard Sprague & Co.*, 104 Pa. Superior Ct. 389, 159 A. 191.

Aside, however, from the question whether claimant successfully met the burden imposed upon him by section 434, supra, in order to secure the setting aside of the receipt, it must be remembered in this case that the petition for additional compensation was filed within one year after the date of the last payment of compensation under the agreement. The amendment of April

13, 1927, P. L. 186, 194, to the second paragraph of section 413 of the statute, 77 PS §772, provides, inter alia, for the reinstatement of a compensation agreement upon proof that the disability of an injured employee has increased. There is ample testimony in this case that claimant's disability increased rapidly after the last payment of compensation under the agreement and the compensation authorities would have been justified in reinstating the agreement under the authority conferred upon them by section 413. The statement made by counsel for appellants at page twelve of their brief and reading, "He [claimant] is barred by section 413 as no petition was filed within one year after the last payment of compensation," is incorrect and should not have been made. Their own history of the case shows the petition was filed even within one year after the accident.

When the employer and its carrier appealed from the decision of the board to the common pleas its appeal was dismissed. At this point we encounter some difficulty with respect to the form of the action taken by the court below. After reviewing the case the following order was entered: "The appeal of the defendant is dismissed." The effect of that disposition of the appeal was to affirm the order of the board which reinstated the compensation agreement as of October 24, 1932. This, as we view it, should have been the termination of the proceedings below.

Provision is made in section 6 of the amendatory Act of 1919, supra, (P. L. 666) 77 PS §921, for the filing of a certified copy of a compensation agreement, or of an award, with the prothonotary of the court of common pleas of the county and the entry by him of a judgment for the total amount of compensation payable thereunder "whether then due and accrued or payable in future instalments." As a general proposition, this section is applicable to uncontested agreements

and unappealed from awards, but we think it is also applicable in the case of reinstated agreements. The court below apparently overlooked the fact, above noted, that neither the referee nor the board made a technical award of compensation and that the effect of its order was to reinstate the terminated agreement as of the specified date.

The common pleas accordingly followed the direction of section 427 of the Act of 1919, supra, 77 PS §878, and entered a judgment for the principal sum of $6,487.16, "payable in accordance with the provisions" of the statute and its amendments. The judgment as entered also contains the following paragraph: "$15.00 per week beginning October 24, 1932, and continuing for 499-1/7 weeks, together with interest on all deferred payments." The trouble with this paragraph is that the total amount therein specified would be $7,487.16—an amount in excess of the maximum of $6,500 fixed by section 306 (a). We think the better practice would be to vacate the judgment as having been improvidently entered by the court below. The record in that court should close with an order reading: "Appeal dismissed and order reinstating agreement affirmed." The way will then be open for the claimant, if necessary, to have a judgment entered upon the agreement by the prothonotary in the form prescribed by this court in *Graham v. Hillman Coal and Coke Co.*, 122 Pa. Superior Ct. 579, 186 A. 400, and *Kessler v. North Side Packing Co.*, 122 Pa. Superior Ct. 565, 186 A. 404. It is particularly important that the practice outlined in those cases be followed here because the medical evidence on behalf of claimant shows there is some prospect of improvement and a consequent decrease in the extent of his disability.

Judgment, as entered, vacated and record remitted to the court below for the entry of a judgment in accordance with this opinion.