Dosen *v.* Union Collieries Company, Appellant.

214

Argued April 10, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Edward J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*Alexander D. Rosenbaum,* with him *Jacob Seligsohn,* for appellee.

Opinion by Hirt, J., September 29, 1939:

In this workmen's compensation case claimant seeks to set aside his final receipt because of alleged mistake of fact and on the ground that it was induced by improper conduct of defendant.

Claimant, a loader in a coal mine, on February 3, 1933, was pushing a car up an incline with his back against the car when he lost his footing. The car rolled back upon him, injuring his spine. An open agreement was entered into under which defendant paid compensation until August 26, 1933, when claimant signed a final receipt applicable to all injuries sustained on February 3, 1933. On October 23, 1933, he suffered a second injury under almost identical circumstances, and a second agreement was entered into. The injury for which he was paid compensation under the second agreement was an inguinal hernia. Though there is evidence that claimant's back also was injured in this accident and his former disability aggravated by it, the second compensation agreement is silent as to any disability other than hernia of the left groin. Compensation for the second injury terminated by order of the referee as of September 24, 1934, and there is no complaint as to that.

On August 1, 1934, claimant petitioned to set aside the final receipt given August 26, 1933. The referee dismissed the petition. On appeal to the board new findings of fact and conclusions of law were substituted for those of the referee, the final receipt was set aside and a resumption of compensation payments was ordered. On appeal to the common pleas, the record was remitted to the board for more specific findings. The board complied, and on the return of the record to the common pleas, the board's findings were sustained and judgment was entered in accordance with the award.

Two questions are raised by this appeal: 1. Does claimant's testimony rise to the degree of proof required to set aside a final receipt? 2. Does the record disclose a finding of the compensation authorities that the disability of claimant is attributable solely to the first injury of February 3, 1933?

The validity of the order setting aside the final receipt must rest, if at all, upon the eleventh finding of

the compensation board, as follows: "We find that on August 26, 1933, the claimant was still disabled and that the fact of his disability was known to the officials of the defendant. That although the claimant attempted to work as a coal loader shortly prior to the signing of the final receipt, it was because of his own insistence on trying to work, motivated as he was by his obligation to support a large family consisting of his wife and eight minor children, the youngest of which was then only six months old. That the claimant was discouraged by his superior in the mine from attempting to work at that time, they being cognizant of the fact that he was unfit and in no condition to engage in that kind of employment. That the final receipt which he signed was in the form of a receipt attached to a voucher check for the sum of $1.51 and that he was requested to sign this receipt in order to obtain this sum of money without being told that he was signing a final receipt. That the claimant did not know, nor was he informed that the paper which he had signed was a final receipt, nor was it explained to him what the legal effect of signing said paper would have on his right to receive compensation in the event that his efforts at work proved that he would be unable to continue. We therefore find that the receipt was signed by the claimant under a mistake of fact both as to the nature of the instrument which he signed, and as to his physical condition at the time that he signed it. We also find as a fact that the circumstances under which he was requested to sign this receipt, were such that it was incumbent upon the representatives of the employer fully to explain to the claimant who was an illiterate laborer of foreign birth and unfamiliar with the nature of legal writings, the true and full character of the instrument which he was asked to sign, and the legal effect which such execution by him of said instrument would have. That the failure on the part of the representatives of the employer to make this explanation and to acquaint

the claimant with the true nature and character of the final receipt, was under the circumstances improper conduct on the part of the defendant within the meaning of the Workmen's Compensation Act which provides for the setting aside of a final receipt on that ground." There is testimony supporting the above findings with two exceptions, viz: there was no mistake of fact according to claimant as to his physical condition, and there is no testimony to the effect that he was illiterate.

Claimant, because of his responsibilities to support a large family, returned to work on August 15, 1933, though defendant's agent in charge of compensation, six days before believed him unfit because he still complained of pain in his back. Between that date and October 31, 1933, the mine was in operation intermittently for thirty-seven days, of which claimant worked thirty-four days. He testified that during that period he "was getting so weak from pain that he couldn't work steadily;" that he suffered pain constantly and was not effective in his work. He said, "Many times I even kneeled down and try everything to work through for days but at last I was down;" and again, "I couldn't hardly walk in the mine, I couldn't stand, my back was hurting me so bad." On August 26, 1933, the final receipt was taken. Claimant testified that he had been required to sign receipts for all payments as they were made and that he was not informed that he was signing a final receipt but was told, "Here is your check, sign this paper," and that he signed it without reading or having it explained to him. He also said that in 1934, while he was receiving payments for the second injury, he was told that the payments after the first nine weeks were made for the injury to his back.

Claimant cannot rely upon mistake of fact as a ground for setting aside the receipt, for, according to his testimony, he was still suffering disability from the first injury, and, if so, he was not mistaken as to his condition at the time. The mistake of fact contemplated by

the Compensation Act refers to a fact which existed at the time the final receipt was signed: *Shetina v. Pitts. Ter. Coal Corp.*, 119 Pa. Superior Ct. 425, 179 A. 776; *Reddicks v. Welsbach G. & E. Co.*, 124 Pa. Superior Ct. 285, 188 A. 417. There is, however, sufficient evidence of what under the circumstances, amounts to improper conduct on the part of the representative of the defendant which induced the execution of the receipt. The high degree of proof essential in other classes of cases where it is sought to set aside a written instrument is not demanded in a compensation case. The humane purposes of the act negative such requirement. But an order vacating a final receipt must be based on sufficient evidence, and the burden is on claimant to establish his right to have a final receipt set aside by evidence reasonably satisfactory. The evidence must be more than a scintilla. "While courts have been very generous as to the rules of evidence to establish causation when initial compensation depended on it, yet when that compensation has been paid and a final receipt given, the evidence to overthrow the latter must be of a more definite nature." It must be such as to make it certain to the trier of the fact that the factual grounds for revocation existed: *Shuler v. Midvalley Coal Co.*, 296 Pa. 503, 146 A. 146; *Graham v. Hillman Coal & Coke Co.*, 122 Pa. Superior Ct. 579, 186 A. 400; *Eberst v. Sears Roebuck & Co.*, 334 Pa. 505, 6 A. 2d 577. The triers of facts have so found upon sufficient evidence, and though there is testimony which would support a contrary view, their conclusion is final: *Krock v. Ballard Sprague & Co.*, 104 Pa. Superior Ct. 389, 159 A. 191.

On the second question the record presents some confusion. In the board's 8th finding of fact, this appears: "When he suffered the [second] accident causing his hernia it further aggravated his back condition so as to again totally disable him apart from the disability as the result of his hernial condition." This finding cannot be reconciled with the following statement of the

9th finding: "that he was partially disabled from August 1, 1933, to October 23, 1933; that the claimant has been totally disabled since October 23, 1933, and that all this disability is a result of his accident and injury of February 3, 1933," the first injury. In the same paragraph the board also found "that this [the second] accident and injury so aggravated the pre-existing back condition as to totally disable the claimant separate and apart from the hernia." The court en banc also based its order and judgment upon the findings of persisting disability from the first injury of February 3, 1933, as aggravated by the second injury of October 23, 1933.

Here, then, we have a judgment sustaining an award for two separate and distinct injuries in a proceeding relating exclusively to one of them, namely the first injury. The compensation for the second injury was definitely terminated by order of the referee on September 24, 1934, and that order is not challenged. If claimant's back was injured also in the second accident, a claim should have been filed or agreement entered covering that disability as well as the hernia. The Compensation Act contemplates a separate claim for each distinct accidental injury. Compensation in this case, therefore, ultimately must be limited to an award for injuries resulting from the first accident of February 3, 1933.

This case has been in litigation for five years, and we are reluctant to return it for further proceedings, but we have no choice in the matter.

The judgment is reversed, the record is remitted to the court below to the end that it may be by that court remitted to the board for further proceedings.