## Dosen *v.* Union Collieries Company, Appellant.

Argued November 10, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Edward J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*Jacob Seligsohn,* with him *Murry J. Jordan* and *Fred J. Jordan,* for appellee.

OPINION BY HIRT, J., December 11, 1942:

Claimant received an injury to his spine on February 3, 1933. On October 23, 1933 he suffered a second injury resulting in an inguinal hernia. Separate compensation agreements were entered into with defendant employer for each of these injuries. The first agreement was terminated by a final receipt given by claimant on August 26, 1933; compensation for disability from the hernia ended by order of the referee as of September 24, 1934. In a proceeding brought by claimant on August 1, 1934, the final receipt for compensation for the first injury was set aside and the board found claimant to be disabled and awarded compensation accordingly. On an appeal from the judgment entered on that award we reversed and remitted the record for further proceedings (137 Pa. Superior Ct. 213, 8 A. 2d 442) for the reason that the judgment in favor of claimant was based upon inconsistent findings. The board found that "claimant has been totally disabled since October 23, 1933; and that all of this disability is a result of his [first] accident and injury of February 3, 1933." But in the same paragraph the board also found "that this [second] accident and injury so aggravated the pre-existing back condition as to totally disable the claimant separate and apart from the hernia." There is also the finding: "When he suffered the [second] accident causing his hernia it further aggravated his back condition so as to again

totally disable him apart from the disability as the result of his hernial condition." The award was for 50% partial disability until the second accident and for total disability thereafter, with deductions for the amount of compensation paid. Upon these conflicting findings it seemed clear that the board made an award for two separate and distinct injuries in a proceeding relating to only one of them, based upon disability from the first as aggravated by the second injury. Compensation for the second injury had terminated on September 24, 1934 by an order which was not challenged; that order is a final adjudication that all disability from the second accident had ended.

The first appeal to this court determined that there was sufficient evidence to set aside the final receipt given on August 26, 1933; that question has been decided finally and is not now before us. The record was remitted for a single purpose; for a determination of the basic issue, upon proper findings, whether claimant was still disabled as a result of the first injury, unaffected by the second accident and, if so, for an award reflecting the extent of that injury.

The referee to whom the case was referred on this issue properly considered the question de novo (although no additional testimony was taken; see §427 of the Compensation Act as amended, 77 PS 879) and found that claimant was totally disabled as a result of the first accident alone. The board on appeal came to the same conclusion but for clarity, set aside findings of the referee and made new findings of fact, among them, the following: "Seventh: That on February 14, 1933, [shortly after the first injury] X-rays disclosed exostosis of the anterior border of the fourth and fifth lumbar vertebrae, with a pulling of the anterior ligament away from the body of the fifth lumbar, pulling a small piece of cancellous bone with it. X-ray pictures taken February 1934, disclosed the same pathol-

ogy. We find that the exostosis existed prior to February 3, 1933, [the date of the accident] being in a quiescent state with little or no discomfort to the claimant, but that the trauma he sustained to this region caused the pulling of the ligaments and the piece of bone with it, resulting in total disability." "Eleventh ...... The board is of the opinion and so finds as a fact that, due to the injury he sustained on February 3, 1933, the claimant is physically incapacitated from engaging in manual labor, due to pathology which has been persistent and continuous in varying degrees of intensity since that time ...... That the condition of total disability, as a result of the original injury, still continues." Upon these findings the board entered an award based upon total disability from February 11, 1933 with credits "for the amount of compensation previously paid to claimant from February 11, 1933 to August 15, 1933, for which period the claimant has been compensated, and the period from August 15, 1933 to October 24, 1933, during which period claimant was employed, and for the period from October 24, 1933 to September 24, 1934, during which period the claimant was being compensated ......" for the second injury.

It is now unimportant that the board in the original proceeding found that claimant's disability resulted from the first injury as aggravated by the second. Remitting a compensation case to determine a basic question of fact (in this case whether claimant's disability is attributable to the first accident) is the equivalent of ordering a new trial on that issue. In the common pleas the award of a new trial nullifies the first verdict and all inferences from it as completely as though there had never been a previous trial. "A new trial being ordered, the case is, of course, restored to the status it had before any trial took place and is fully open to be tried de novo": *Pa. Co. for Ins. on Lives etc., Appellant,*

*v. Lynch,* 308 Pa. 23, 162 A. 157. The verdict of a jury on a second trial is never open to the objection that it is inconsistent or wholly at variance with the verdict in a previous trial of the same case. The analogy between a verdict of a jury and the conclusions of the fact finders in a compensation case has been recognized. *Ford v. Dick Co.,* 288 Pa. 140, 135 A. 903; *Healey v. Carey, Baxter & Kennedy, Inc.,* 144 Pa. Superior Ct. 500, 19 A. 2d 852. The controlling question in the present appeal, therefore, is whether there is sufficient competent evidence to support the findings of the present board, on the second trial on the facts, that claimant's total disability is attributable to the first injury alone. It is appellant's belief that there was no accident on February 3, 1933, but that claimant's disability beginning with that date resulted entirely from an arthritic condition of the spine which had developed to a disabling stage on that date.

There is ample evidence of an accident on February 3, 1933 and from the circumstances it well may have been serious. Claimant testified that he was working alone and in pushing a car weighing 3,500 pounds up hill with his back to the car, his feet slipped and he fell to a sitting posture and the bumper of the car returning down grade struck him in the back. He was examined by the company doctor and put to bed and remained there for five weeks. Although suffering almost constant pain he returned to work on August 15, 1933, not because he was fit to work but because of a responsibility, which he felt keenly, to support his wife and eight children. Moreover, his testimony does not necessarily indicate that his disability was aggravated by the second injury. That remained a question largely for his medical witnesses. He testified that on October 23, 1933 while he and his buddy were pushing a car up grade he was again struck in the back by a car under similar circumstances.

Although claimant then left his work because of the pain in his back it is significant that the company's doctor who examined him found no evidence of injury other than a hernia and the compensation agreement entered into following that accident describes the injury as a hernia and nothing more. True, to the question "And this injury received on October 23, 1933, just aggravated the old injury?" claimant answered: "That is all and I felt worse ever since." The answer does not necessarily conclude claimant nor amount to an admission by him that his present disability is attributable to the aggravation of the first injury by the second. The question was leading and the answer was not comprehensive—he did sustain a hernia and his answer made no reference to it. Claimant's buddy testified that he complained of pain in his back constantly before as well as after the second accident. The significance of this reply was for the triers of the facts.

Dr. Albert Berkowitz first examined claimant on April 19, 1934. He was given a history of an accident on February 3, 1933 with an injury to claimant's back, as a result of which claimant was obliged to remain in a prone and tilted position with his lower extremities weighted for a period of about five weeks. (There is no dispute as to that and the board so found.) He had a history of a rupture on October 23, 1933 but of no other injuries subsequent to the first accident. On examination this witness found "some limitation of motion in the spine so that anterier flexion was limited to an angle of about forty-five degrees, and there was muscular spasm over both lumbar muscles." He said further: "I took x-rays and they showed a notch of the anterior superior portion of the third, fourth and fifth lumbar vertebrae, which I interpreted as being fractures of the superior anterior portion of these vertebrae"—"a chipping of the front top portion of three vertebrae." His conclusion was that because of

the injury which claimant sustained from the first accident he "has total disability for all manual types of labor." Claimant was a coal miner and there is no evidence that he was ever qualified to do anything else.

Dr. M. A. Blumer, an orthopedic surgeon, examined claimant and the x-ray plate of April 19, 1934. He too, found limitation in bending motion of the body accompanied by considerable pain. His impression from the clinical objective findings was that of a traumatic involvement of the lumbar spine. In the x-ray plate he found evidence of arthritis but also "a tearing of the superior anterior portion of the fifth, the fourth, and the third lumbar vertebrae" where they are attached to the anterior ligament. "This [he said] is evidence of traumatic örigin, because if it were an arthritic exostosis or spur it would extend from the auricular surface of the body and not from the portion of the body to which the anterior ligament is attached." He found evidence of secondary arthritic processes but from the evidence of disability of traumatic origin, it was his opinion that claimant was totally disabled, from that cause.

Dr. P. A. Brown, a roentgenologist, made x-ray examinations of claimant's back on February 14, 1933, April 25, 1933 and February 21, 1934. He testified that the plates show little change during the period and no evidence of bone injury. He found exostosis of the anterior border of the fourth and fifth lumbar vertebrae but interpreted these as evidence of arthritis and nothing more. His opinion was based solely upon his x-ray examination; he did not have a history of the case.

Dr. Blumer, recalled, was shown the x-ray plate of February 1933; in it he found evidence of a chipping of a small piece of bone from the fifth vertebrae and in his opinion trauma caused the separation by "the pull

of the ligament away from the body in his fifth lumbar." He found the same condition in the film of February 21, 1934, and in all of the other plates including that taken by Dr. Berkowitz. It was his conclusion that "arthritis was pre-existing to the trauma and the trauma was simply a condition superimposed on the old arthritic condition." He again expressed an opinion unequivocally that "the cause of his present disability is due to the injury received in February of 1933." As to these plates, the testimony of Dr. Berkowitz, when recalled, was substantially the same.

On appeal we must view the evidence in the light most favorable to the claimant since the findings are in his favor. *Hockenberry v. State Wkm's Ins. Fund,* 133 Pa. Superior Ct. 249, 2 A. 2d 536. So considered, there is competent evidence sufficient to sustain the findings. All of the medical witnesses were claimant's witnesses. Some variance in their testimony is to be expected. Even competent experts do not always agree on the reading of x-ray plates. The roentgenologist who testified did not have a history of the accidents. There is evidence that a history of the case is helpful in arriving at the right conclusion. The other two doctors agree that all of the x-ray plates show substantially the same condition of the spine without change throughout the period between February 14, 1933, and April 19, 1934, and that in each of the plates there is evidence of disability from accident attributable to the first injury and that the disability is total. The fact that two other doctors, who treated claimant or examined him at defendant's request, were not called to testify is not without significance.

The judgment gives the defendant credit for the period August 15 to October 24, 1933, when claimant received wages equal to his former earnings. The 1939 amendment of 306b, 77 PS 512, does not apply and for this period claimant, in strictness, may have

been· entitled to compensation for partial disability. Cf. *Sayre v. Textile Machine Works,* 129 Pa. Superior Ct. 520, 195 A. 786. But the credit is to defendant's advantage and claimant has not challenged it. That part of the order, however, liquidating the judgment to July 13, 1942 is set aside. The statute does not contemplate that a court of common pleas in entering judgment may liquidate the amount due on that date. *Strait v. Gulf Oil Co. et al.,* 140 Pa. Superior Ct. 464, 14 A. 2d 168.

The judgment, otherwise, is affirmed.