## Brown *v.* Union Collieries Company, Appellant.

Argued April 14, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Edw. J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*A. L. McLaughlin, Jr.,* for appellee.

OPINION BY HIRT, J., September 9, 1943:

Claimant, a "car dropper" in the employ of defendant was injured on March 30, 1938. In closing the doors of a railroad car by means of a wrench he suffered a severe sprain of the lower back in the region of the lumbar vertebrae. He was treated by a local physician and a cast was applied to the back and later a brace was substituted. Payments for total disability were made under an open agreement until October 10, 1938 except for the period of about six weeks when claimant performed some light work and the agreement was modified accordingly. Because of a recurrence of the effects of his injury the agreement was again modified to provide compensation for total disability on October 15, 1938.

Apparently the first thorough diagnosis and serious effort to remedy claimant's condition began on January 15, 1939 when he came under the care of Dr. John A. Heberling, an orthopedic surgeon. X-ray showed evidence of a slight forward position of the 5th lumbar vertebra on the sacrum with a narrowing of the vertebral space between them; movements of the lower back were limited in all directions and bending produced pain and muscle spasm. Spinal fusion of the vertebra and the sacrum was accomplished by an operation and a cast was applied. Over a period, claimant showed a gradual improvement and on October 14, 1939 the compensation agreement for total disability was modified to provide weekly payments of $6.08 reflecting partial disability of about 1/3. Claimant had returned to light work in the lamp house on September 28, 1939, at a daily wage of $5 and as of that date the agreement was

again modified to provide compensation for partial disability at 86 cents per week, computed on the basis of the difference between his then earnings and his wages before the injury. Because of pain and weakness in his back, legs and hip, claimant was compelled to quit this work on November 18, 1940 and has not worked since. He then petitioned for a further modification of the agreement alleging a recurrence of total disability from the accident. Defendant in its answer admitted partial disability; at the hearing however it contended it was not liable for compensation exceeding 86 cents per week and insisted that all additional disability is attributable to disease not related to the accident. The referee and the board found 35% partial disability and modified the agreement to provide weekly payments of $6.47. The lower court affirmed. The question is whether the evidence is sufficient to sustain the order of the board.

Upon examination in January 1939 Dr. Heberling found hamstring spasm in claimant's leg when raised. Ankle jerks were absent and knee jerks were diminished but there were no other clinical signs of injury or involvement of the spinal cord. After claimant finally quit work his tonsils were removed because of the possibility of infection from them aggravating the condition in his back. Arch supports were also provided to correct flat feet. This treatment did not materially improve claimant's condition and in the opinion of this medical witness he has a continuing disability of from 35% to 50%.

Dr. Heberling was a frank witness but he was defendant's witness and claimant was obliged to rely upon his testimony. He did not see claimant until long after the injury and we do not consider it fatal to claimant's case that he was unable to say unequivocally that claimant's condition was entirely of traumatic origin. There may be serious injury to the back or the spine which

cannot be demonstrated by x-ray. Inferentially his testimony indicates a causal connection. When asked whether claimant's disability is due "to any accident or injury or is the origin an infection of some kind?" he replied: "Well, of course, the man gave me a history of having worked before the injury, and not having worked after that, and not having had any back trouble before the injury—that's all I have to go on. It's true we have no evidence in the pictures or in any of our examination of any injury, other than such as he gave a history of, which I would put down as a severe chronic sprain, with possibly some narrowing of the space between the 5th lumbar vertebra and the sacrum. In other words, there isn't any sign of fracture or any gross bony changes which could have been produced by injury, in any of our x-ray or other examinations."

The burden was on claimant [1] to establish disability from accident, but whether the narrowing of the intervertebral space between the 5th lumbar and the sacrum was caused by the accident is not controlling. Dr. Heberling "felt that this change was not traumatic" but he accepted the history of "severe chronic sprain" and his testimony supports the reasonable inference that the sprain so aggravated this condition of the back as to become the independent cause of the disability. *Bittner v. Saltlick Township*, 109 Pa. Superior Ct. 406, 167 A. 483.

On appeal we must view the evidence in the light

---

[1] The existing agreement fixed the status of claimant and his right to compensation for partial disability to the extent agreed upon. *Carson v. Real Estate-Land T. & T. Co.*, 109 Pa. Superior Ct. 37, 165 A. 677; *Williams v. Baptist Church*, 123 Pa. Superior Ct. 136, 186 A. 168. But when claimant petitioned for a modification of the agreement, alleging a recurrence of total disability, the burden was on him to prove an increase in disability attributable to the accident. One seeking to change the status created by the agreement must assume the burden of proof. *Carson v. Real Estate-Land T. & T. Co.*, supra.

most favorable to claimant since the findings are in his favor. *Dosen v. Union Collieries Co.,* 150 Pa. Superior Ct. 619, 29 A. 2d 354. This is not a case where the compensation authorities were compelled to rely solely on expert medical testimony. Cf. *Mohr v. Desimone & Sayers,* 110 Pa. Superior Ct. 44, 167 A. 504; *Flour v. Penna. Railroad Co.,* 99 Pa. Superior Ct. 170; *Kucinic v. United Eng. & Fdy. Co.,* 110 Pa. Superior Ct. 261, 168 A. 344; *Johnson v. Valvoline Oil Co.,* 131 Pa. Superior Ct. 266, 200 A. 224. Findings of fact may be made upon inferences from proved facts as well as from direct proof, (*Hockenberry v. State Wkm's. Ins. Fund,* 133 Pa. Superior Ct. 249, 2 A. 2d 536) especially in a case such as this where the sequence of events strongly indicates a causal connection between the injury and the continuous disability following it. A circumstance of importance is the fact that claimant had no disability before the accident, and had worked steadily. The first compensation agreement recites that in the twenty-six weeks period before the accident, although defendant's mines were in operation but 85 days, claimant worked 92 days. Cf. *Svestka v. Union Collieries Co.,* 149 Pa. Superior Ct. 468, 27 A. 2d 675. An accident was proven; claimant has been disabled since the injury and defendant admits that claimant still suffers partial disability from the accident in some degree. He is not a malingerer but is anxious to secure some employment. Both he and Dr. Heberling believe he is able to return to light work such as he has performed in the lamp house since his injury. By providing such employment defendant can minimize its compensation liability.

The judgment will be affirmed when modified as to form to comply with the rule of *Graham v. Hillman Coal & Coke Co.,* 122 Pa. Superior Ct. 579, 186 A. 400.