Ciotti, Appellant, *v*. Jarecki Manufacturing
Company.

Argued April 14, 1937.

234

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Clarence A. Patterson,* for appellant.

*W. Pitt Gifford,* of *Gunnison, Fish, Gifford & Chapin,* with him *A. Grant Walker,* for appellee.

Opinion by James, J., July 15, 1937:

The sole question involved on this appeal is, to what extent shall the injury be fixed under the compensation act.

The referee in his first finding of fact found in part as follows: "Anthony Ciotti was injured on May 14, 1935 while at work in the employ of the Jarecki Manufacturing Company at Erie, Penna.; that the claimant was threading pipe and while removing a nipple from the machine, it caught between the chuck and the rail severing the thumb of his left hand; that the thumb was amputated back of the first phalange, a little less than one-fifth of the second phalange being removed;" and he awarded compensation for the loss of a thumb.

The physician, called by the employer, testified that "the injury had crushed off the end part of the thumb almost to the joint. It was necessary to take off the bone just back of the joint in order to get a good stump on the end of the part that was left." On appeal, the Workmen's Compensation Board affirmed the referee's findings of fact and conclusions of law. The court of common pleas modified the award and allowed compensation for the loss of one-half of the thumb, basing its opinion on the doctor's testimony that claimant should develop a good gripping power in the remaining thumb and it should be useful to him in his employment, and that the loss of but one-fifth of the lower phalange is such a minor portion of that phalange that an award for the total loss of the thumb could not be sustained.

Section 306(c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of April 13, 1927, P. L. 186, 77 PS §513, provides: "For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:......For the loss of a thumb, sixty-five per centum of wages during sixty weeks......The loss of the first phalange of the thumb, or of any finger, shall be considered equivalent to the loss of one-half of such thumb or finger, and shall be compensated at the same rate as for the loss of a thumb or finger, but for one-half of the period provided for the loss of a thumb or finger. The loss of *more* than one phalange of a thumb or finger shall be considered equivalent to the loss of the entire thumb or finger......Permanent loss of the use of a......finger or thumb, shall be considered as the equivalent of the loss of such......finger or thumb ......" (Italics supplied). Injuries are by the act classified in three categories: (1) total disability, (2) partial disability, (3) disability resulting from permanent injuries, in the last of which compensation is payable exclusively, as fixed for the specified permanent in-

jury, at a definite number of weeks, irrespective of whether the disability be permanent or partial, and without taking into account whether it may have ceased altogether within the period fixed for payment: *Berskis v. Lehigh Valley Coal Co.*, 273 Pa. 243, 116 A. 888. "Paragraph (c) fixes the total compensation for permanent injuries to certain parts of the body. Under it must be considered all disability 'resulting from' or related to permanent injuries, and the compensation for such injuries shall be 'exclusively' as therein provided. It will be noted the governing feature in this paragraph is a *permanent injury*, while in the former paragraphs the governing feature is a disability from an injury......In other words, this legislative mandate fixed the amount to be paid in such cases without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial or no incapacity at all": *Lente v. Luci*, 275 Pa. 217, 119 A. 132.

In determining the amount of compensation payable for a specific injury under paragraph (c), it is not material what the extent of the disability is, the question being what is the extent of the injury suffered by the employee. Whether his earning capacity has or has not been affected is not to be considered. In considering the degree of usefulness the employee had of the remaining part of his thumb under the facts of this case, the court below was in error—the question being, was the loss of one-fifth of the second phalange more than one phalange within the meaning of section 306(c). When one considers that for the permanent injuries specified in paragraph (c) the compensation shall be exclusive and bears no relation to the loss actually suffered by the employee, every reasonable intendment of its express language should be upheld in behalf of the employee. The loss of more than one phalange does not mean that there must be a loss of more phalanges than one; the loss relates

to more of the finger than one phalange: *Chingola v. Aetna Life Ins. Co.*, 86 Pa. Superior Ct. 514.

"More" is usually defined as "to a greater extent or degree; in a larger quantity; in addition." Clearly, the loss of one-fifth of the lower phalange is "to a greater extent or degree" than the loss of the first phalange. Paragraph (c) does not attempt to define how much more than the first phalange shall be considered equivalent to the loss of the entire thumb or finger. "What shall constitute the loss of a thumb or finger, or a loss of one-half thereof, is arbitrarily fixed by the act"; *Micciche v. Pancoast Coal Co.*, 90 Pa. Superior Ct. 434. The specific language of this section does not permit the compensation authorities or the courts to indulge in speculation as to what fractional part of the second phalange has been lost, whether one-half, one-third, one-fifth or any other fractional part of the thumb or finger. If it is more than one phalange, it is a total loss of the thumb or finger. Any other construction would result in a multiplicity of view points by the compensation authorities as to what fractional part of the second phalange shall constitute "more than one phalange." The language is specific and plain and should be given its usual and ordinary meaning. As was said in the opinion of the lower court in *Chingola v. Aetna Life Ins. Co.*, supra: "The act furnishes a rule of thumb, with the rationality of which the court is not concerned."

In holding that one-fifth was such a minor portion of the lower phalange of the thumb as not to be compensable as a total loss, the court below was persuaded by the language of this court in *Chingola v. Aetna Life Ins. Co.*, supra. In discussing whether the loss of the first phalange and about one-half of the middle phalange of the index finger of the right hand was a total loss of the finger, this court said: "There may be cases in which the loss was of such a minor portion of the second phalange that an award could not be sustained, under the clause

above quoted, as for the loss of the entire finger, but that does not seem to be this case. The statute must be interpreted with fair liberality to the end of securing the benefits which it was intended to accomplish. The loss of the first phalange and one-half of the second, is a substantial loss of more than one phalange." The inadvertent use of the word "substantial" was not necessary for the determination of the question then before this court, and as we presently view the question, it is not the test or rule for determining whether a total loss of a thumb or finger has been sustained.

We are not impressed by appellee's argument that the employer has been penalized by the act of a physician in removing a portion of the bone back of the first joint so as to cause a loss of more than one phalange, and, henceforth, physicians and surgeons, employed by employers and insurance companies, may be instructed to disregard the ultimate welfare of the employee and amputate only so far as may be necessary because of the injury. According to the physician's testimony, the cutting was necessary to make a good job, and we have too high a regard for the medical profession to believe that it will not be governed in its professional relations by the standard fixed in the oath of Hippocrates, "the Father of Medicine," wherein it is stated: "I will follow the system of regimen which according to my ability and judgment, I consider for the benefit of my patients and abstain from whatever is deleterious and mischievous." The compensation act provides that it is the duty of the employer to furnish reasonable surgical and medical services to injured employees and when the employee places himself under the care and treatment of the employer's physician or surgeon, he has the right to receive, while under his charge, the same skill and care as if he were a private patient. The fact that the physician or surgeon is being paid by the employer does

not in any manner affect his duty toward his patient; the employee's welfare should be his only concern.

We shall not attempt to distinguish authorities from other states cited by the appellee.[1] In many respects the provisions of the compensation acts there considered differ materially from the provisions of our act, and although we have carefully considered them, we believe the conclusion here reached to be more in harmony with the scheme and plan of our compensation act.

The judgment of the court below modifying the award of the referee, as affirmed by the board, is reversed and the record is remitted with instructions to enter judgment upon said award. The claimant will then be entitled to receive not only the aggregate of the instalments due, but also simple interest upon each instalment from the date that particular instalment should have been paid.

---

[1] *Baron v. National Metal Spinning & Stamping Co.*, 169 N. Y. Supp. 337; *Forbes v. Evening Mail*, 185 N. Y. Supp. 592; *Edge Moor Iron Co. v. Sidwell*, 131 A. 868 (Delaware); *Tetro v. Superior Printing & Box Co.*, 172 N. Y. Supp. 722, 185 N. Y. App. Div. 73; *Maxwell's Case*, 119 Maine 504, 111 A. 849; *Van Eps v. Sligh Furniture Co.*, 257 Mich. 112, 241 N. W. 182; *Fanning v. Wood Co.*, 255 Mich. 618, 238 N. W. 627.