Vince *v.* Allegheny Pittsburgh Coal Company, Appellant.

Argued April 15, 1943. Before KELLER, P. J., BALD-

334

RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*William A. Challener, Jr.,* with him *William A. Challener,* for appellant.

*A. L. McLaughlin, Jr.,* for appellee.

OPINION BY BALDRIGE, J., September 9, 1943:

In this workmen's compensation case the claimant on September 18, 1939, while coupling cars sustained an accidental injury which made necessary an amputation of a part of the distal phalanx of the left thumb. He returned to work on September 29, 1939, but refused to execute a final receipt for compensation payable under an agreement providing for total disability. Defendant petitioned to terminate the agreement. The claimant filed an answer stating he was entitled to compensation for the specific loss of one-half of his thumb under section 306(c) of the Workmen's Compensation Act of 1915, June 2, P. L. 736, as amended by the Act of 1939, June 21, P. L. 520, 77 PS §513.

Dr. Snyder, the operating surgeon and the only medical witness, testified that he amputated "about one-half of the bony phalanx" of the claimant's left thumb. A chart of the bony structure of the hand was introduced in evidence and the doctor drew a line designating the portion which he had dismembered. At the end of his testimony the referee, upon examining the chart, asked the witness the following question: "On Defendant's Exhibit 'A', upon which you indicate the portion of the

distal phalanx which was destroyed by reason of your operation, or rather the part that was severed, (not trying to be technical, but) it appears to me that there was more than one-half of that phalanx taken off? A. Possibly you are right as far as the bony phalanx is concerned, but that is approximately. That is not absolutely accurate. Approximately, that is the line of amputation through the bone."

The referee found that the claimant had not lost the distal phalanx of the left thumb within the meaning of the Act of 1939 and denied compensation for a specific loss. The board reversed the referee and awarded compensation under section 306(c). The court below on appeal affirmed the board. The board in its opinion stated: "We feel that, in view of the diagram, though explained as not being absolutely accurate, at least one-half of the phalanx was amputated and *possibly more*." (Italics supplied.) The vague expression which we have italicized was not a definite finding by the board that more than one-half of the phalanx had been amputated. Its sixth and sole finding respecting the amputation, and upon which the appellee relied, is as follows: "SIXTH: We are of the opinion, and find as a fact, that the claimant has lost the distal phalanx of the left thumb as a result of the accident of September 18, 1939."

Dr. Snyder's testimony taken in its entirety indicates that "about" one-half of the phalanx had been amputated. His indefinite statements together with the chart offered which was all the evidence that was introduced as to the amputation, did not warrant a finding that more than one-half the phalanx had been lost, and, as above observed, no specific finding was made to that effect. The board confined itself to holding that the claimant "lost the distal phalanx of his left thumb." That was not really a finding of fact, but rather a conclusion of law based upon a construction of the meaning of a phalanx or phalange.[1] If considered

[1] "Phalange" is used in our statute but "phalanx" seems to be preferred by our lexicographers. These words are synonymous

a finding of fact, there was no evidence to support it.

As the claimant was seeking compensation under section 306(c) it was encumbent upon him to bring himself within its provisions. Evidence respecting the extent of the loss of a thumb, finger, or toe should be explicit, of a similar standard required to establish a causal relation between an accident and an injury: *Elonis v. Lytle Coal Company*, 134 Pa. Superior Ct. 264, 3 A. 2d 995; *Beck v. Franklin Glass Corporation et al.*, 136 Pa. Superior Ct. 204, 212, 7 A. 2d 600. The operating surgeon should be able to give definite information respecting that matter.

The amendment of 1937, June 4, P. L. 1552, to section 306(c) of the Workmen's Compensation Act of 1915, provided: "...... *the loss of less than one phalange* of the toe, thumb, or of any finger, shall be considered equivalent to the loss of one-half of such toe, thumb or finger, and shall be compensated at the same rate as for the loss of a toe, thumb, or finger, but for one-half of the period provided for the loss of a toe, thumb, or finger: Provided, however, That the accident involves injury to part of the bone of the phalange." (Italics supplied.) The 1939 amendment to section 306(c) under which the claimant seeks compensation provides "*the loss of the first phalange of the thumb, or of any finger, shall be considered equivalent to the loss of one-half of such thumb or finger, and shall be compensated at the same rate as for the loss of a thumb or finger, but for one-half of the period provided for the loss of a thumb or finger.* The loss of more than one phalange of a thumb or finger shall be considered equiva-

and used interchangeably in the decisions of the various courts. Gould's Medical Dictionary, Third Edition, defines "phalanx" as "one of the bones of the fingers or toes." Webster's New International Dictionary defines it as "...... one of the digital bones of the hand or foot beyond the metacarpus or metatarsus" so that a phalanx does not include flesh, only the bony structure of a finger or toe.

lent to the loss of the entire thumb or finger." (Italics supplied.)

This change in the phraseology of the 1939 Act restoring that portion of 306(c) as it was prior to the 1937 amendment is significant; it must have been for a purpose and cannot be ignored.. It is an elemental·rule of statutory construction that a change of language in a statute indicates a change of legislative intent: *Ogilvie's Estate,* 291 Pa. 326, 333, 139 A. 826; *Commonwealth v. Lowe Coal Company,* 296 Pa. 359, 365, 145 A. 916; *Dixon's Case,* 138 Pa. Superior Ct. 385, 391, 11 A. 2d 169.

Section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, Article IV, 46 PS §551, provides: "When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters ...... (5) the former law ......"

Under the 1937 amendment of the Workmen's Compensation Act the claimant undoubtedly would have come under section 306(c). The altered language clearly indicates that it was the design of the legislature not to continue, but to change, the legal effect of this portion of the statute. A strict interpretation of the portion of 306(c) we are considering would require a loss equivalent to the whole phalanx and not a part thereof to make it applicable. We cannot dispense with the plain requirements of a statute, although the Workmen's Compensation Act is given a construction favorable to an employee where possible; that has always been the liberal policy of this court: *Ciotti v. Jarecki Manufacturing Company,* 128 Pa. Superior Ct. 233, 238, 193 A. 323; *Ottavi v. Timothy Burke Stripping Co.,* 140 Pa. Superior Ct. 389, 395, 14 A. 2d 188; *Ginther v. J. P. Graham Transfer Co. et al.,* 149 Pa. Superior Ct. 635, 641, 27 A. 2d 712. If so much of the first phalanx had been amputated that the first joint was lost for all useful and practical purposes, the question before us would be more difficult of solution. See *Matkosky v,*

*Midvale Company,* 143 Pa. Superior Ct. 197, 200, 18 A. 2d 102.

The provisions of the New York Statute relating to the loss of the first phalanx of a thumb or finger is the same as ours. In *Tetro v. Superior Printing and Box Company,* 172 N. Y. S. 722, 185 App. Div. 73, it was held that an award for the loss of the first phalanx, where the claimant lost between one-quarter and one-half of the distal phalanx of the index finger, was erroneous. See, also, *Thompson v. Sherwood Shoe Co.,* 164 N. Y. S. 869, 178 App. Div. 319.

In re: *Petrie,* 215 N. Y. 335, 109 N. E. 549, a case quite frequently cited, the claimant met with an accidental injury. The commission found that the injury resulted in "the amputation of the third finger on the right hand near the first joint" and "in the amputation of the third finger about one-third of the bone of the distal phalange was cut off," and awarded compensation for the loss of the entire "phalange" of the finger under section 15 of the New York Compensation Law. The argument was made there, as here, that compensation for the loss of a phalanx can only be awarded in case the entire phalanx has been lost. The court there stated that if a minor portion of the phalanx is lost an award for the loss of the entire phalanx could not be sustained; that while the findings of the commission were somewhat contradictory and unsatisfactory it concluded in the light of the evidence that the findings should be properly construed as stating that substantially all of the phalanx was cut off and it was upon that theory that the award was sustained. The court's final statement was that giving a fair and liberal construction of the compensation laws it should be held that "the provisions of the statute providing compensation for the loss of a certain portion of the finger become operative and applicable when it appears that substantially all of the portion of the finger so designated has been lost and that we should not interpret such pro-

visions too narrowly for the purpose of defeating a recovery."

In *Forbes v. Evening Mail et al.*, 185 N. Y. S. 592, 194 App. Div. 563, the court stated, p. 593 : "It is evident that 'substantially all' of a phalange cannot be removed, and 'substantially all' of the same phalange be left after the removal. Necessarily, therefore, under the Petrie case, the major portion or more than half of a phalange must be removed before the same is 'substantially lost,' and a 'loss of the first phalange,' within the meaning of the statute, is made out."

In *Chingola v. Penn Iron & Steel Co.,* 86 Pa. Superior Ct. 514, the claimant suffered the loss of the "first phalange" and about one-half of the "middle phalange" of the index finger of his right hand. The provisions of the supplement of March 29, 1923, P. L. 48, were then in force and were the same as the 1939 amendment. In sustaining an award there for the loss of the index finger we said that we found no conflict in the conclusion reached by the board and the court below and the decision of the Court of Appeals of New York in the *Petrie* case, supra.

In *Maxwell's* case, 119 Me. 504, 111 A. 849, where the claimant had practically two-thirds of the distal phalanx amputated, it was held that there was not a substantial loss of all the phalanx as the employee had one-third of it left and he was able to bend the injured finger at the distal joint. See, also, Annotations 18 A. L. R. 1354, 1358.

A careful study of this record and the law applicable thereto convinces us that the evidence does not support the findings and conclusions of the board, which were affirmed by the court below.

Judgment is reversed and entered for defendant.

DISSENTING OPINION BY RHODES, J. :

I disagree with the statement in the majority opinion that the evidence "did not warrant a finding that more than one-half the phalanx had been lost"; and I find

no warrant for the further statement that "if considered a finding of fact [sixth finding of fact], there was no evidence to support it." Even the quoted testimony does not justify these categorical conclusions as a matter of law. It is true that the board made no specific finding as to the exact percentage of the phalange which had been lost, but in my judgment this was not necessary because the sixth finding of fact was sufficient. This was an ultimate finding based upon evidentiary facts, and what the board had said supported that finding. It may have been a mixed finding, but it was not merely a conclusion of law. Of course, whether a finding of fact by the board is supported by competent and substantial evidence is a question of law.[1] It is likewise true that the inferences from the facts established by competent and substantial evidence are for the board to draw, and not for this court.

In its opinion the board said: "The diagram or dismemberment chart discloses that about two-thirds of the distal phalanx was amputated." Dr. Snyder, the maker of the chart, testified that the line on the chart was approximately the line of amputation through the bone. This chart was in evidence, and, if the line of amputation was only approximate, it is nevertheless convincing proof that more than one-half of the phalange was severed. Neither the board nor Dr. Snyder said that *only* one-half of the phalange had been amputated. The interpretation given to the evidence in the

---

[1] "In truth the distinction between 'questions of law' and 'questions of fact' really gives little help in determining how far the courts will review; and for the good reason that there is no fixed distinction. They are not two mutually exclusive *kinds* of questions, based upon a difference of subject-matter. Matters of law grow downward into roots of fact, and matters of fact reach upward, without a break, into matters of law ...... It would seem that when the courts are unwilling to review, they are tempted to explain by the easy device of calling the question one of 'fact,' and when otherwise disposed, they say that it is a question of 'law' ": Administrative Justice and the Supremacy of Law in the United States, by Dickinson (1927), p. 55.

majority opinion could not have been made if there had been applied the principle that the Workmen's Compensation Act is to be given a liberal construction, or the rule that the evidence must be read most favorable to the claimant, in whose favor the finding has been made. *Ciotti v. Jarecki Mfg. Co.,* 128 Pa. Superior Ct. 233, 238, 193 A. 323; *Dosen v. Union Collieries Co.,* 150 Pa. Superior Ct. 619, 626, 29 A. 2d 354.

On the other hand, if, as the majority opinion states, the expressions in the board's opinion are vague and its findings not definite, then this case calls for the application of section 427 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, art. 4, as amended and reenacted, 77 PS §877, and the record should accordingly be remitted.

As I view it, this case presented a factual situation for the board to resolve, and, having found for claimant on competent and substantial evidence which establishes that more than one-half of the distal phalange had been amputated, the real question is whether the loss of more than one-half of the phalange, which is certainly a major portion, constitutes substantially all the phalange and supports an award.

Section 306(c) of the amendatory act of June 21, 1939, P. L. 520, 77 PS §513, is the same for the purposes of this case as in the acts of March 29, 1923, P. L. 48, and April 13, 1927, P. L. 186. The board, relying upon In re *Petrie,* 215 N. Y. 335, 109 N. E. 549, held under the latter acts that the amputation of at least one half amounted to substantially all of the first phalange, and awarded compensation for loss of one-half of the member. *Osborne v. State Workmen's Insurance Fund,* 8 W.C.B. 49; *Stang v. Stang,* 11 W.C.B. 271. In *Matkosky v. Midvale Co.,* 143 Pa. Superior Ct. 197, 200, 18 A. 2d 102, we indicated the validity of this construction.

The Act of 1939 repealed the provision in the Act of June 4, 1937, P. L. 1552, which expressly provided that the loss of less than the first phalange should be

considered equivalent to the loss of one-half of the member. But this does not require or warrant an interpretation of the Act of 1939 that all the first phalange must be lost before compensation is payable under section 306(c).

The New York State Act relating to the loss of the first phalange of a thumb or finger is virtually the same as the Act of 1939. In re *Petrie*, supra, 215 N. Y. 335, 109 N. E. 549, cited in the majority opinion, states the controlling rule to be that the provisions of the statute providing compensation for the loss of a certain portion of a thumb or finger become operative and applicable when it appears that substantially all of the portion of the thumb or finger so designated has been lost. In that case, as in the present case, more than a half of the phalange had been lost, and compensation was allowed. In *Forbes v. Evening Mail*, 185 N.Y.S. 592, 194 App. Div. 563, compensation was refused because there was a loss of less than one-half of the phalange, but the rule enunciated in the *Petrie* case was recognized.

I would affirm the judgment.