16179

CRENSHAW v. PENDLETON MFG. CO. *ET AL.*
(54 S. E. (2d) 61)

*Messrs. Watkins & Watkins,* of Anderson, *for Appellants,*

*Mr. W. K. Charles,* of Greenwood, *for Respondent,*

February 4, 1949.

TAYLOR, Justice.

On November 7, 1944 respondent while employed by the Pendleton Manufacturing Company suffered injuries arising out of and in the course of his employment for which on May 14, 1946, the South Carolina Industrial Commission made an award which was paid in full. Within the statutory period' respondent made application for further compensation on the grounds of a change of condition. Pursuant to a hearing on such application an award was made granting claimant compensation as being totally and permanently disabled. A review was had before the whole commission which sustained the findings of the single commissioner. An appeal was taken to the Circuit Court which resulted in an order by the Honorable G. B. Greene affirming the award from which the appellant, Pendleton Manufacturing Company and its insurance carrier, Maryland Casualty Company appeals to this court upon exceptions which pose the question of whether or not there is any testimony to support the findings of the Industrial Commission that respondent has undergone a change of condition and such is the result of the injury sustained by him on November 7, 1944.

It is a well established rule of law that in Workmen's Compensation Cases, the court can only review the facts to determine whether there is any competent evidence to support the findings of the Commission, and, if the facts are capable of sustaining the inference of fact drawn from them by the Commission, the findings are conclusive in the absence of fraud. *Shehane v. Springs Cotton Mills,* 206 S. C. 334, 34 S. E. (2d) 180; *Elrod v. Union Bleachery,* 204 S. C. 481, 30 S. E. (2d) 73. The award will

be upheld if there is a scintilla of evidence supporting the award. In re Crawford, 205 S. C. 72, 30 S. E. (2d) 841.

Respondent testified that the injury was sustained to the left shoulder but the condition has become progressively worse until "pretty well every joint in me is sore except my elbow."

Mrs. Foster who is claimant's daughter and lives next door testified as follows:

"Q. Are you frequently over at your father's? A. Every day.

"Q. Mrs. Foster, state whether or not, in your opinion, your father is in worse condition now than he was in August of 1945 when we had a hearing before. A. He certainly is.

"Q. From your observation, to what extent is his condition worse, his physical condition? A. Well, he's not able to do anything. The only thing he does is sit around the house. There's nothing much to do but bring in a little water and he may bring in a bucket or two of water a day, and then he has to go to bed.

"Q. Is he able to walk with ease? A. No. I can see him from my house toddling down to the barn, and he will stop maybe before he gets to the barn.

"Q. State whether or not he can dress himself? A. No, sir. I have had to help put his clothes on when I am there.

"Q. How about his shoes? A. I think he goes with them untied most of the time.

"Q. Prior to that first injury he had was his health good; was he able to perform his usual activities and duties and work regularly? A. Yes, sir. I worked with him and we went back and forth together every day.

"Q. Has he been able to work since 1945? A. Nothing only here a few months ago he tried it and he fell out. The fact of the business, I thought he was gone.

"Q. Will you state for the benefit of. the Commissioner here Mr. Crenshaw's present physical condition? A. Well, he's a good deal worse now than he was at the first hearing.

"Q. To what extent is he worse, in what way; what parts of the body are involved now that weren't involved then? A. It seems like he's worse in his shoulders, right arm, leg, foot, all over seems like."

The testimony of claimant, his wife and daughter to the effect that claimant has undergone a change of condition for the worse since the hearing is evidence to be considered by the Commission in rendering its award.

Dr. L. E. Mays witness for the claimant testified as follows:

"Q. State whether or not his condition has progressed, gotten better or worse since then? A. I would say he has a somewhat worse condition than he did then because, to begin with, his trouble was mainly in one shoulder, the left shoulder, and it has involved other joints since I have been taking care of him.

"Q. State whether or not this condition could be attributed to an injury that he received in November, 1944, when he received an injury to his shoulder. A. It would be possible. Do you want me to make a statement along that line or just answer your question?

"Q. Yes, sir. A. I would say more than likely the injury aggravated the pre-existing condition, and since that time it has spread to involve other joints.

"Q. Then the aggravation could progress right on to the extent it has now, involving other joints? A. In my opinion, I think it could have." * * *

"Q. And that could be traceable to the injury, from an aggravation standpoint? I mean the progressing condition of the arthritis could be the outgrowth of an injury aggravating a pre-existing arthritis? A. Could I qualify that?

"Q. Yes, sure. A. In this sense it possibly could: We know arthritis is aggravated by inactivity. One important

thing is to keep the joints working, and when a person is hurt they are more likely to be inactive for a while; and due to inactivity, yes."

Where medical testimony is relied upon to sustain an award of the Industrial Commission it is not sufficient to say that the condition of claimant could possibly have arisen or it would be possible to have resulted from the injury. This court has gone so far as to hold in cases where medical testimony is relied upon that testimony to the effect that it is the witness' opinion that such ailment most probably came from the cause alleged was sufficient to sustain an award by the Industrial Commission. *Ashley v. South Carolina Highway Dept.*, 213 S. C. 354, 49 S. E. (2d) 505; *Mack v. Branch No. 12, Post Exchange*, 207 S. C. 258, 35 S. E. (2d) 838; *Rivers v. V. P. Loftis Co. et al.*, 1949, 214 S. C. 162, 51 S. E. (2d) 510.

A study of the testimony presented by Dr. Mays shows that he stated that "more than likely" claimant's injuries aggravated a pre-existing condition which since that time has spread to involve other joints.

Volume 25, pages 286, 287, of Words and Phrases, Perm. Ed., defines the words "probably" and "likely" as follows:

"The term 'likely' means probable or reasonably to be expected. *Vohs v. A. E. Shorthill & Co.*, 130 Iowa 538, 107 N. W. 417, 419, citing Webst. Dict.; Cent. Dict.

" 'Likely,' as used in instructions relative to preponderance of evidence, is not a proper synonym of 'probable.' *Howard v. State*, 108 Ala. 571, 18 So. 813, 816.

"Words 'probably' and 'likely' are used synonymously in indicating consequences likely to flow from an existing condition of an injured person. *Barron v. Duke*, 120 Or. 181, 250 P. 628, 632.

"The word 'likely' means 'probable,' and is equivalent to that word as used in a question to a physician, in an action for personal injuries, as to what, in his opinion, would be

the 'probable' effects of the wounds on the future health of the injured party. *O'Brien v. New York, N. H. & H. R. Co.,* 59 Hun. 623, 13 N. Y. S. 305.

"The word 'likely' is not synonymous with the word 'probable', but has practically the same meaning in a question to a witness as to whether personal injuries are 'likely' to be reduced or increased as the injured person grows older. *Knoll v. Third Ave. R. Co.,* 46 App. Div. 527, 62 N. Y. S. 16, 19. * * *

"While the term 'likely' has in it to a certain extent an element of probability, it is not strong enough to make proper evidence facts which are likely to occur. In an action for injuries, a medical expert cannot be asked as to whether an injury such as the plaintiff received would be 'likely' to produce the condition related to the witness. *Higgins v. United Traction Co.,* 96 App. Div. 69, 89 N. Y. S. 76, 77.

"The word 'probable' does not mean free from doubt, but carries with it the idea that the contingency is more likely to happen than otherwise. It is said to be synonymous with the word 'likely.' * * * *Willard Oil Co. v. Riley,* 29 Okl. 19, 115 P. 1103, 1105.

"The words 'probable,' 'likely,' and 'liable' are synonymous when applied to the effects of a personal injury, each dealing with reasonable probability, not with possibility, and what may probably, or is likely or liable to be the future result of a personal injury, is competent evidence to prove what is reasonably certain in the matter. *Hallum v. Village of Omro,* 122 Wis. 337, 99 N. W. 1051, 1054.

In Volume 27, Words and Phrases, Perm. Ed., page 567 we find that the word "more" is usually defined as "to a greater extent or degree; in a larger quantity; in addition." *Ciotti v. Jarecki Manufacturing Co.,* 128 Pa. Super. 233, 193 A. 323-324. On page 569 of the same volume we find that an act providing compensation for loss of more "than one phalange" as for the loss of the entire finger, covers the case of loss of an entire phalange and a substantial por-

tion of the second phalange amputated from surgical necessity from the initial injury; the word "more" being used as an adverb and not as an adjective. *Brugioni v. Saylor Coal Co.,* 198 Iowa 135, 197 N. W. 470.

"An instruction was correct, which, construed as a whole, told the jury that, after rejecting the testimony of witnesses discredited by them, their verdict should be for claimant, if there was more testimony—that is, a preponderance of testimony—tending to establish the validity of her claim, and, if there was not, their verdict should be for the estate." *Taylor v. Taylor's Estate,* 138 Mich. 658, 101 N. W. 832, 835.

In the case of *Utah Fuel Company v. Industrial Commission,* 1942, 102 Utah 26, 126 P. (2d) 1070, 1072, where medical testimony was weak, the words "possibly" or "might" being used, but it was clear from the time the employee received his injury until his death that he grew progressively worse, an award was sustained stating that "even doctors have no television of the pathological history of the inside of a man." Horovitz on Workmen's Compensation P. 151.

For the foregoing reasons, although the medical testimony in this case is very weak, this court is of the opinion that the words "more than likely" are sufficient to sustain the award of the Industrial Commission by reason of its previous holdings in *Ashley v. South Carolina Highway Dept.; Mack v. Branch No. 12, Post Exchange* and *Rivers v. V. P. Loftis Co., et al., supra.*

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.