## 16455

### DUCKER v. DUNEAN MILLS *ET AL.*

(63 S. E. (2d) 314)

*Messrs. Haynsworth & Haynsworth,* of Greenville, *for Appellants, Dunean Mills and Liberty Mutual Insurance Company,*

466

*Messrs. Mann, Arnold & Mann,* of Greenville, *for Respondent, Aetna Casualty & Surety Company,*

*Messrs. Culbertson & Foster,* of Greenville, *for Respondent, Marie Ducker, Employee.*

*Messrs. Haynsworth & Haynsworth,* of Greenville, *for Appellants, Dunean Mills and Liberty Mutual Insurance Company, in Reply,*

January 22, 1951.

PER CURIAM.

Prior to January 1, 1948, the Aetna Casualty & Surety Company was the Workmen's Compensation carrier for the Dunean Mills. On January 1, 1948, this coverage was as-

sumed by the Liberty Mutual Insurance Company. During the year of 1947, the respondent, Mavis Ducker, was employed as a textile worker at Dunean Mills, and received an injury in November of 1947. At that time the Aetna Casualty & Surety Company was the insurer. The injury occurred when a shuttle flew off a loom and hit her on the left side or peripheral area of the head, towards the rear of the skull. On May 10, 1948, while Liberty Mutual Insurance Company was the carrier, the respondent was again injured when a shuttle flew off a loom and hit her in the left temple or temporal region of the head. As a result of these accidents the respondent, Mavis Ducker, filed a claim with the Industrial Commission.

The existence of a compensable injury is not at stake. The issue before this Court is whether the November injury, while Aetna Casualty & Surety Company was the employer's carrier, was the sole cause of respondent's disability, or did the two injuries in combination produce the disability. In the second question there is the problem of whether the second injury, in May of 1948, aggravated the first.

The Single Commissioner found that the respondent had been temporarily and totally disabled from May 10, 1948, until the date of the hearing, that both injuries combined to cause the disability and both carriers should equally share compensation payments and medical expenses. The employer and the insurance carriers appealed to the Full Commission and on November 29, 1949, the award of the Single Commissioner was affirmed and made the opinion and award of the Full Commission.

Within due time the employer and its carriers appealed to the Court of Common Pleas, which appeal, by consent, was transferred to the Greenville County Court, and heard by Honorable W. B. McGowan, Judge of that Court. Judge McGowan sustained the appeal of the Aetna Casualty & Surety Company, dismissed it from the action, and held the liability to be that of the Liberty Mutual Insurance Com-

pany, the carrier for Dunean Mills in May, 1948, on the basis that the second accident definitely aggravated any condition which may have been caused by the first accident, and since there was no apparent disability and diminution of earning capacity until the second accident, the first carrier, having surrendered the risk on or about January 1, 1948, should be discharged.

It will be observed that the issue in this Court, on appeal, is between the two carriers. Mavis Ducker is entitled to compensation and it has to be paid by one or both of the carriers. The Aetna Casualty & Surety Company, for the purposes of this appeal, is the respondent, and the Liberty Mutual Insurance Company the appellant, although neither is referred to as respondent or appellant.

After careful study of the record, the conclusion has been reached that the injury of November, 1947, is the sole cause of the disability. This means the Full Commission and the County Court of Greenville are both in error and the liability is that of Aetna Casualty & Surety Company.

The November inqury happened while respondent was working on the third shift. The accident was reported when she finished her shift. The shuttle from the loom struck her on the left side or peripheral area of the head and broke the skin or caused an abrasion which was painted by the nurse on duty. She did not go to a doctor until the second accident. but in about one month, as related by respondent, the site of the injury started bothering her, a "knot" formed thereon which gradually became sorer and sorer. The November injury continued to bother respondent until and beyond the May, 1948, accident. When this second accident occurred, she reported to the nurse who referred respondent to the company physician, Dr. J. G. Murray. In concultation, she told Dr. Murray about the first blow and he then started treating it.

Dr. Murray lanced or incised the "knot" formed from the November lick and treated the area of the May blow, which

was swollen and tender. Respondent says she did not re-
ceive any relief from the incision but it became worse, "It
made it sore and it swelled worse than it was before he ope-
rated."

In describing the November injury the respondent said:
"I did not notice it until the first of the year that there was
a knot formed up there. It kept hurting and I noticed that
there was a knot up there, and it got touchy. If I touch it, it
just runs all over me. It is so quickie I can hardly touch it
now. It did all the time I was working up until May."

The respondent, in relying to a question whether the pain
was coming from one blow alone or both, said:

"A. No, sir, I don't know which it was.

"Q. It is just the left side of your head that hurts? A. All
down there.

"Q. All down the left side of your face? A. Yes, ears and
throat too, the whole side."

However, the following is also quoted from her testimony:

"Q. You can't swear where the pain comes from, the in-
jury—the November or May lick, or from both, can you?
A. Well, I would say both. Before the second one, I didn't
have this hurting in my ears and throat, and since the last
one it hurts all down through here, and if I stoop down it
shoots all the way up from both of them.

"Q. Since the last lick then the pain has tended to spread
down to the left side of your face? A. That's right.

"Q. Before the May lick the pain was localized in your
head? A. Yes, sir, mostly in that knot there.

"Q. It wasn't as severe, it didn't cause you to lose any
time? A. Well, I didn't work regular. I wasn't able to work,
but still I didn't tell them."

Respondent's opinion as to which lick being the cause of
her disability, or whether the second aggravated the first, has
no probative value, but her description of the progress of her

physical condition is material when considered in relation to the time of the two accidents.

Dr. Murray testified he treated respondent on May 10, 1948, at which time he received the history of the first injury. Dr. Murray said he examined the site of the first injury, in the left parietal region of the head, "and there was a small tumor mass, I would say about the size of a buckshot, perhaps, which I though would be a little cyst formation, so I incised the thing to relieve it, and when I got in there, it wasn't a cyst, but just some fibrous tissue, that was all that was done." In answer to a question why it was there, Dr. Murray said, "based on the history of a previous injury at that point I assume it was fibrous tissue resulting from the first injury."

The last treatment administered by this medical witness to respondent was in June of 1948, and he did not see her again until the second hearing before the Single Commissioner on July 13, 1949, when he examined her during the progress of his cross-examination. In his direct examination Dr. Murray stated he did not expect that the fibrous tissue would increase in size over a period of time, nor did he find anything in his examinations in May and June of 1948 which would render respondent incapacitated from work. In the cross-examination he was asked to again examine Mrs. Ducker, and somewhat to his surprise he found a thickness and swelling in the area of the first injury about the size of a fifty cent coin which he described as being a tumor mass. Throughout his examination this doctor would not state that respondent was incapacitated from work by reason of either injury, nor is there to be found in his testimony any statement that the existence of the tumor mass was in any way caused by or accelerated by the second injury. In fact, he referred to the second injury only briefly, describing it as a swelling which did not increase in size and cleared up in a few days. In reference to the second injury, he also stated there was a bruise of the skin—not an abrasion but more of

a contusion. While respondent first went to Dr. Murray as a result of the second injury, it developed the treatments received were principally for the fibrous or tumor mass caused by the first injury.

In June of 1949 the respondent was examined by Dr. G. C. Pettigrew, who testified in her behalf. Dr. Pettigrew related the medical history of the case and gave the following as his objective findings: "I found on the left parietal area of the skull, just below the mid-sagital suture, a mass approximately two inches, a flat mass approximately two inches long and around one and a half inches wide, the edges of which were very irregular, and was tender on pressure." From the $x$-ray plates Dr. Pettigrew says "she had an area on the left parietal bone between the size of a quarter and a half dollar, which was necrotic in the bone, a necrotic area the size of a quarter or half a dollar." Dr. Pettigrew further testified that unless she received continued medical treatment her condition would continue to get worse, and from his opinion she had been disabled since the time of the injury. This witness also stated he did not find any injury to the temporal region, the site of the second injury, nor was there any reason to expect trouble from the second accident, and that the disability was gradually getting worse.

The closest approach in the record to any testimony to show that the second injury aggravated the first is found in the testimony of Dr. Pettigrew. He was asked if it was humanly possible to say which lick was the cause of the whole suffering, and he answered that he wouldn't say which one; "probably the first one is the cause, and the second one aggravated it." This answer was followed by a question, "If she worked following the first one, it may be the second one was the sole cause? It may be the first one; it may be a combination of the two?" Answer, "I couldn't say which was which." These questions and answers were preceded by testimony from this witness, already referred to, that the disability was caused by the November

lick. His answer to the effect that the second accident probably aggravated the first leaves the cause and effect relationship in surmise or conjecture. This Court, in a number of cases, has already held that where medical testimony is relied upon to sustain an award, the medical witness must testify, taking into consideration all attending data, it is his or their professional opinion that the result in question most probably came from the cause alleged. It will be seen that it is not sufficient to say that the result in question *probably* came from the cause alleged, but *most probably,* or words of similar import. Dr. Pettigrew did not use the phrase "most probably," nor does he give any facts or circumstances to support the word "probably" in connection with aggravating effects. On the other hand, when saying probably the first accident was the cause, he has preceded this statement with a very strong opinion to the effect that the cause of the disability is the lick received in November.

While respondent's physical condition became worse at or following the May accident, there is an absence of evidence to sustain a finding of fact that the second accident accelerated or aggravated the first injury. It is just as probable that the necrosis, fibrous tissue, tumor mass, or whatever it may be, was in a natural state of progress, or the unfortunate result of the operation and would have occurred if there had not been a May accident, as it is probable that the May lick aggravated the November injury.

In *Crenshaw v. Pendleton Manufacturing Co.,* 215 S. C. 66, 54 S. E. (2d) 61, in an opinion by Mr. Justice Taylor, we held that while the words "likely" and "probably" are somewhat synonymous when used in a question to a physician on a medical issue, nevertheless a professional opinion based upon a likelihood or probability is not sufficient to support a Workmen's Compensation award on an issue of cause and effect. A greater degree of certainty is attained when the doctor's opinion is based on more than a likelihood or more than a probability, which is sometimes expressed in the

phrases "more than likely," "more than probable," or "most probably," or other words or phrases of similar meaning. These latter phrases convey that degree of definiteness which is necessary to sustain an award in questions of this nature.

We do not find any testimony herein to support the opinion and award of the Full Commission that claimant is temporarily disabled as the result of the combined injuries, or if the word "combined" is used in the sense of "aggravated," that the second accident definitely aggravated any condition which may have been caused by the first. While we agree with Judge McGowan in his conclusion that the Full Commission committed error in holding both carriers liable, we think that he is in error in sustaining the Commission on the point of the aggravation.

It is our conclusion that the accident in November of 1947 is the sole cause of respondent's disability, and in consequence of which the liability is that of Aetna Casualty & Surety Company.

There are two reports by doctors who did not testify at the hearings. These reports are referred to in the testimony, but are not included in the Transcript of Record before this Court. Therefore, these reports were not considered in reaching our decision.

This proceeding is remanded to the County Court of Greenville County to enter judgment against the Aetna Casualty & Surety Company for the compensation due respondent, medical and hospital bills incurred and to be incurred, and releasing the Liberty Mutual Insurance Company from liability for said compensation and expenses.

. BAKER, C. J., and FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.