## Nolan *v.* Hake et al., Appellants.

Argued March 24, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Raymond J. Porreca,* with him *Raymond A. White, Jr.,* for appellants.

*Lawrence I. Boonin,* with him *Carter & Boonin,* for appellee.

OPINION BY ROSS, J., July 21, 1955:

In this workmen's compensation case, the claimant while acting in the course of his employment suffered an injury to the index fingers of both hands, resulting in the amputation of part of the first phalanges of both fingers. The parties entered into an agreement for the payment of compensation for an indefinite number of weeks. The claimant received payment thereunder for several weeks, and when he returned to work the employer and his insurance carrier filed a petition for termination of the compensation agreement on the basis that the claimant "had returned to work without loss in earning power". Claimant filed an answer denying the allegations of the petition and averring that he still suffered disability with attendant loss of earning power. After hearing, the referee concluded that the claimant had fully recovered from his injuries

and entered an order terminating the compensation agreement. This action was affirmed by the Board but the court below reversed the Board and remanded the case for an award under section 306(c) of the Act. The employer and his insurance carrier thereupon took this appeal.

The only testimony before the referee was given by two medical witnesses for the appellants who testified concerning the amount of the phalange and finger which was removed from each hand, and the claimant who was called as on cross-examination for the purpose of showing that he suffered no loss of earnings. The medical testimony, a dismemberment chart and X-rays show that as to the fleshy pad of each of the index fingers there is a 50 per cent. stump remaining on the distal phalanges, but as to the right distal phalange there is a 90 per cent. loss of the bony structure, and as to the left a 70 per cent. loss of the bony structure. There is no dispute about the extent of these losses. Consequently, the question before us is whether these facts constitute a compensable loss within the meaning of that part of section 306(c) of the Workmen's Compensation Act, 77 PS sec. 513, which provides as follows: "For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows: . . . For the loss of a first finger, commonly called index finger, sixty-six and two-thirds per centum of wages during thirty-five weeks. . . . The loss of the first phalange of the thumb, or of any finger, shall be considered equivalent to the loss of one-half of such thumb or finger, and shall be compensated at the same rate as for the loss of a thumb or finger, but for one-half of the period provided for the loss of a thumb or finger." ·

· We are not concerned with the fact that the claimant has suffered no loss of earning power. Under sec-

tion 306(c) compensation is payable irrespective of a claimant's actual disability or incapacity to labor. By this section, a fixed amount is to be paid without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial, or no incapacity at all. *Morrow v. J. S. Murray & Sons,* 136 Pa. Superior Ct. 277, 7 A. 2d 109; *Thatcher v. Weinstein,* 154 Pa. Superior Ct. 368, 35 A. 2d 549; *Lente v. Luci,* 275 Pa. 217, 119 A. 132.

The statute provides compensation for the loss of a "phalange". In *Vince v. Allegheny Pittsburgh Coal Co.,* 153 Pa. Superior Ct. 333, 33 A. 2d 788 (hereinafter discussed), in a footnote on page 335, we discussed the medical definition of "phalange" and concluded that it "does not include flesh, only the bony structure of a finger or toe". We can, therefore, dispense with the fact that the claimant here had a loss of only 50 per cent. of the fleshy pad and concern ourselves only with the loss of the bony structure. The amount of fleshy pad is immaterial where the Act makes loss of the bone compensable. Had the legislature intended that the loss of flesh be compensable or of importance in determining the extent of the loss, it would have so provided instead of merely defining the compensable loss by use of a technical medical term which has a distinct reference to the bone only.

In the *Vince* case, relied upon by the appellants, the claimant suffered a loss of "about one-half of the bony phalanx" of his left thumb. Under a 1937 amendment to the Compensation Act, ". . . the loss of less than one phalange . . ." was compensable. In 1939 (prior to the *Vince* case, which arose in 1943), the legislature amended this section of the Act to read "the loss of the first phalange of the thumb or finger" shall be compensable. This Court recognized that there

was a legislative intent in changing the specific language of the Act, to change the nature of the injury which would be compensable. Cited and discussed in the *Vince* case are two New York cases interpreting the New York Act, which is virtually the same as ours in this respect. *In re Petrie*, 215 N. Y. 335, 109 N.E. 549, sustained an award where ". . . it appears that *substantially all* of the portion of the finger so designated has been lost. . . . We should not interpret such provisions too narrowly for the purpose of defeating a recovery." And in *Forbes v. Evening Mail*, 185 N.Y.S. 592, 194 App. Div. 563, the *Petrie* rule is recognized at page 593: "Necessarily therefore, under the Petrie case, the major portion or *more than half* of a phalange must be removed before the same is 'substantially lost', and a 'loss of the first phalange', within the meaning of the statute is made out."

The appellants contend that the *Vince* case holds that to sustain an award for loss of a phalange there must be proof of permanent loss of use by amputation or otherwise of all of the phalange. However, that case is not authority for the proposition contended for by the appellants. A careful reading of the opinion discloses that it is authority only for the proposition that evidence that "about" one-half of the phalange had been amputated did not support a finding that the injured person had lost the phalange. It is true that Judge (later President Judge) BALDRIGE in the course of the *Vince* opinion stated: "A strict interpretation of the portion of 306(c) we are considering would require a loss equivalent to the whole phalanx and not a part thereof to make it applicable." This, however, was immediately followed with a reiteration of the well-established principle that the Workmen's Compensation Act is to be liberally construed.

Our courts have repeatedly held that the compensation laws must be given a fair and liberal construction. To require that the entire phalange be removed before it is compensable would be unduly strict and not in keeping with this liberal policy of the Act. We can see this liberality under similar parts of section 306(c). In *Ciotti v. Jarecki Mfg. Co*, 128 Pa. Superior Ct. 233, 193 A. 323, for example, the provision allowing additional compensation where there is a "loss of more than one phalange of a thumb" was held to require merely a loss of more of the thumb than one phalange, not a loss of more phalanges than one. Thus, if just a small part of the second phalange is lost, the additional compensation provided by this section would be payable. In fact, it is not even necessary under the *Ciotti*[1] rule that "substantially" all of the second phalange be removed. So too, we find in the Act itself that an amputation at or above the elbow shall be considered as the loss of an arm; that amputation at or above the knee shall be considered as the loss of a leg; that amputation between wrist and elbow shall be considered as the loss of a forearm. The legislative intent clearly was not to compensate merely for the exact physical extent of the loss, but rather to provide to the working man remedial compensation consistent with what common experience shows the true loss to be.

We believe that the award in this case should be sustained under a fair and liberal interpretation of the Compensation Act. Had the claimant lost 95 per cent. or 99 per cent. of the first phalange, the appellants could not seriously contend that he would be barred from compensation because a strict interpretation of the Act might require a total loss of the phalange. Where we draw the line is, of course, a matter

---

[1] Decided before the 1937 amendment.

of interpretation of what, in our opinion, the legislature intended should be the nature and extent of the injury which is compensable. We think a loss of substantially all, or more than half, of the phalange is equivalent to the loss of the whole. It would be unjust for us to require the loss of the whole phalange under this part of section 306(c) when, as we illustrated above, other portions of the same section treat some small additional loss as equivalent to a loss of the whole member.

Order affirmed.